Kenneth Wayne CLIFTON, Appellant,

v.

STATE of Alaska, Appellee.

No. A–853.

Court of Appeals of Alaska.

Nov. 28, 1986.

Sen K. Tan, Asst. Public Defender and Dana Fabe, Public Defender, Anchorage, for appellant.

Nancy R. Simel, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Kenneth Wayne Clifton was convicted of one count of first-degree murder, AS 11.-41.100(a)(1), and one count of misconduct involving weapons in the third degree, AS 11.61.220(a)(1). Superior Court Judge James A. Hanson sentenced Clifton to concurrent terms of sixty years' and ninety days' imprisonment. Clifton appeals, contending that the indictment against him was flawed due to the state's failure to present exculpatory evidence to the grand jury, and that the trial judge erred in allowing the state to impeach a defense witness with prior convictions that were more than five years old. Clifton also appeals the sixty-year sentence as excessive.

*Failure to Present Murray's Statement to the Grand Jury*

The indictment against Kenneth Clifton stemmed from a homicide on Fourth Avenue in Anchorage on the evening of March 2, 1984. Clifton's companion, Glen Murray, became involved in an argument with a prostitute, Tammy Moore. During the argument, Fairell Tanner, another prostitute, was also present. The argument was brief, and it was ending

when the victim, Michael Coon, drove up. Moore got into the car and drove with Coon around the corner. They parked and walked back to the scene of the argument. As Coon approached Clifton and Murray, he asked why they had been harassing Moore and Tanner. Clifton drew a gun from his jacket and shot Coon below the left eye. Coon died from the wound.

Both Clifton and Murray fled after the shooting. Clifton went to his father's house in North Peters Creek. He later returned to Anchorage and was arrested that night at the Palace Hotel. Clifton told the police that he drew the gun intending only to scare Coon and that it discharged accidentally. Murray talked to the police the next day, stating that Clifton acted in self-defense. His statement was not presented to the grand jury.

On appeal, Clifton contends that Murray's statement was exculpatory and that the indictment should have been dismissed due to the state's failure to present exculpatory evidence to the grand jury.

The prosecution has an affirmative duty, under Criminal Rule 6(q), to present exculpatory evidence to the grand jury. *Frink v. State*, 597 P.2d 154, 165 (Alaska 1980). The duty arises from the grand jury's function: protection of the innocent from unjust prosecution. *Id. See also Wilkie v. State*, 715 P.2d 1199 (Alaska App.1986); *Dyer v. State*, 666 P.2d 438, 444 (Alaska App.1983); *Tookak v. State*, 648 P.2d 1018, 1021 (Alaska App.1982).

At first blush, it might appear that Murray's statement to the police was exculpatory. However, upon a closer examination of the circumstances surrounding the making of the statement, the exculpatory effect of the statement is considerably less certain. Clifton and Murray were close friends. Murray left the scene of the shooting quickly and did not go to the police for twenty-five hours. Prior to doing so, he telephoned Clifton's father and learned that Clifton had been arrested and charged with murder. Clifton's father asked Murray to go to the police and make a statement.

More significantly, the details of Murray's statement are inconsistent with Clifton's original claim that the shooting was accidental. Murray described the interaction with Coon as follows:

We were walking toward the west going down 4th Avenue. The guy came around the corner and yelled hey you mother fuckers I want to talk to you. Wait right there I've something to say. Wait a minute and his whore at that time said yeah baby thems the pecker woods, they the ones, they the ones and ah ... we stopped, turned around. I looked at my partner, he looked at me, the guy had his hand in his pocket. I asked my partner have you got a gun? He said yes. The guy walked up and said both you mother fuckers get your hands out of your pockets or I'll blow your brains out. He started to extract a pistol from his right breast pocket of his coat. My friend KENNETH shot him in the head one shot when he threatened us and produced a weapon KENNETH killed him.

By contrast, Clifton gave police the following account:

We were walkin' down the street and one of (the prostitutes) jumped in a car ... a black one and said somethin' to the guy in the car I guess that say that apparently that my friend threatened her, you know, and he come out like a ragin' bull dog. You know, like he was running ... walking real fast and all of a sudden I seen somethin' real shiney off the side of him like a knife or pistol ... and I just pulled my ... weapon to scare him and the weapon ... accidentl (sic) went off ... it was an accidental shooting ... if the weapon was to go off intentionally, it would be to wound him ... not to kill him.

Clifton went on to say that he would not have shot to kill, "[u]nless it was a definitely life or death situation. If I was gonna die, yeah, I would do it to protect myself or my family." Clifton said that Coon came toward him "at a fast rate like he's gonna do bodily harm." He also stated that Coon did not strike or hurt him in any way.

Clifton first asserts that, if admitted before the grand jury, the remarks Murray made to the police would have bolstered his own statement by raising the possibility that he had acted in self-defense. A successful claim of self-defense, however, would have required at least some evidence to support the conclusion that Clifton actually believed his life was in danger:

> [T]o employ self-defense a defendant must satisfy both an objective and subjective standard; he must have actually believed deadly force was necessary to protect himself, and his belief must be one that a reasonable person would have held under the circumstances.

*Weston v. State,* 682 P.2d 1119, 1121 (Alaska 1984). Standing alone, Murray's statement might have sufficed to raise the issue of self-defense. In his own statement, however, Clifton in effect admitted that he never actually believed he was faced with "a definitely life or death situation." When taken in conjunction with Clifton's admission, Murray's statement would not have satisfied the subjective prong of *Weston.*

Clifton further argues that Murray's statement is exculpatory because it "fills in the gaps" in the grand jury testimony of Tammy Moore, the prostitute who was involved in the argument that eventually led to the shooting. Clifton claims that, when taken in conjunction with Murray's statement, Moore's grand jury testimony could be construed to support the theory of self-defense. Before the grand jury, Moore testified that Coon ran up to Clifton with his hands in his pocket. Moore stated, in part, that, "[t]he only words I heard him say was what you messing with the holes for and come out your pocket, or something. And that's when, just pow...." Although Murray's statement that Clifton shot Coon in self-defense may appear to be somewhat consistent with Moore's grand jury testimony, it is in conflict with Moore's statements at the scene of the shooting. At that time, Moore gave no indication that Clifton might have acted in self-defense. She told the police, "he did it, he did it for no reason." In testifying before the grand

jury, Moore similarly discounted any possibility that Clifton acted in self-defense. At one point, she said: "There wasn't a fight ... the [victim] didn't even have a chance to argue or anything." Moreover, Moore never said that she saw Coon with a gun. No weapon was found on or near Coon's body.

Clifton also argues that Murray's statement would have confirmed Clifton's account of what he saw before the shooting. However, there are notable discrepancies between the original statements each gave to the police. For example, Clifton made no mention of Coon making verbal threats, while Murray claimed the victim threatened to "blow [their] brains out."

Thus, although Murray's statement does lend some support to the claim of self-defense that Clifton ultimately advanced at trial, it was inconsistent with evidence available to the state when the grand jury convened to consider Clifton's indictment. At that time, Clifton appeared to be claiming that the shooting was accidental. It is, of course, possible to conjecture that, in his statement to the police, Clifton really meant to assert a mixed claim of accident and self-defense. If this were the case, then Murray's statement could at least arguably be construed to be exculpatory. Yet, any probative force Murray's statement might possess in this regard would necessarily be diminished by the speculative and inferential nature of this theory, as well as by the circumstances in which Murray's statement was made.

Thus, even if Murray's statement were deemed exculpatory, dismissal of the indictment would not be mandated. Failure to produce exculpatory evidence is rendered harmless where the strength of the evidence presented to the grand jury is more than enough to allow the grand jury to return a true bill. *Lipscomb v. State,* 700 P.2d 1298, 1304 n. 4 (Alaska App.1985), citing *Tookak v. State,* 648 P.2d at 1021, and *Giacomazzi v. State,* 633 P.2d 218 (Alaska 1981). *See also Azzarella v. State,* 703 P.2d 1182 (Alaska App.1985). Had

Murray's statement been presented to the grand jury, the evidence against Clifton would still have been exceedingly strong, and it is likely that the grand jury would have indicted him. The grand jury had the opportunity to read Clifton's initial statement to the police. Moore, in her grand jury testimony, gave little indication that Coon had threatened Clifton or Murray. In fact, she stated that "there wasn't really any exchange of words. There wasn't a fight ... the [victim] didn't even have the chance to argue or anything." Neither Moore nor Tanner saw Coon with a weapon at the time of the shooting, and no weapon was found on or near his body. Both Clifton and Murray fled the scene immediately after the shooting, and Clifton discarded his own gun, the murder weapon. Furthermore, the grand jury was made aware that Murray gave a statement to the police; it had the opportunity to request that the statement be presented but chose not to do so. Finally, the grand jury was instructed on the elements of self-defense. We concluded that even if the failure to present Murray's statement was error, the error was harmless and did not require dismissal of the indictment.

### Murray's Prior Convictions

■ Murray was called as a defense witness. The state successfully sought to impeach him with evidence of prior convictions. These convictions covered the time between 1970–76, a time span of eight to fourteen years before Clifton's trial.

Clifton contends that the trial court erred by allowing the state to impeach Murray with prior convictions that were more than five years old. Alaska Rule of Evidence 609 provides:

(a) *General Rule.* For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is only admissible if the crime involved dishonesty or false statement.

(b) *Time Limit.* Evidence of a conviction under this rule is inadmissible if a period of more than five years has elapsed since the date of the conviction.

The court may, however, allow evidence of the conviction of the witness other than the accused in a criminal case after more than five years have elapsed if the court is satisfied that admission in evidence is necessary for a fair determination of the case.

(c) *Admissibility.* Before a witness may be impeached by evidence of a prior conviction, the court shall be advised of the existence of the conviction and shall rule if the witness may be impeached by proof of the conviction by weighing its probative value against its prejudicial effect.

This rule gives the trial court discretion to admit evidence of convictions more than five years old. Moreover, it allows the court a great deal of discretion in balancing probative value against prejudicial impact. *Fairbanks v. Johnson*, 723 P.2d 79, 85 (Alaska 1986). The trial court's ruling is subject to reversal only for an abuse of discretion. *Id.; Hawley v. State*, 614 P.2d 1349, 1361 (Alaska 1980).

The state was able to elicit testimony concerning Murray's prior convictions for one count of breaking and entering in 1970, seven counts of forgery in 1972, one count of larceny in 1972, and two separate larcenies in 1976. Judge Hanson was impressed by what he viewed to be a pattern of felony convictions during Murray's adult life. He was well aware of the prejudicial effect the admission of the prior convictions would have, but also found the convictions to have tremendous probative value:

I'm aware that the prejudicial effect of these convictions—demonstrating these convictions to the jury is devastating to this defendant. I think his conviction or acquittal stands or falls based on whether or not ... the jury believes Mr. Murray. If ... Mr. Murray had an old 14-year-old crime involving dishonesty and then nothing thereafter, or even a couple of cases more than 5 or 10 years old ... there'd be no question in my mind, I would say that those are the mistakes of youth and the individual has probably changed considerably in this time, but a

significant string of felonies involving dishonesty I think are extremely probative of the character of the witness. They're more probative than prejudicial.

Under the circumstances, we do not believe that Judge Hanson abused his discretion in admitting the evidence of Murray's prior convictions.[1]

### Sentencing

Clifton argues that the sentence imposed, sixty years' imprisonment, was excessive. Clifton notes that he has no criminal convictions, does not abuse alcohol or drugs, and has a history of steady employment. According to Clifton, these are mitigating factors that should have been considered by Judge Hanson. Clifton also argues that Judge Hanson should have taken Clifton's theory of self-defense into account in determining an appropriate sentence; that is, Clifton claims that under a theory of imperfect self-defense, he should have received a lesser sentence.

Judge Hanson, in his sentencing remarks, indicated that he did not believe Clifton's claim of self-defense. He characterized Clifton's act as the deliberate execution of another human being. Having been convicted of first-degree murder, Clifton was subject to a sentence of at least twenty, but not more than ninety-nine, years' imprisonment. AS 12.55.125(a). Judge Hanson considered the sentencing

criteria mandated by *State v. Chaney*, 477 P.2d 441 (Alaska 1970). He stated that his primary motivation in sentencing Clifton to sixty years' imprisonment was protection of the public and, to a lesser degree, deterrence of others. Judge Hanson emphasized that he was unable to discern why Clifton acted as he did. The psychiatric reports did little to explain Clifton's actions. Judge Hanson stated further that if Clifton could be rehabilitated during his imprisonment that would be good. To that end, he recommended that Clifton undergo psychological and psychiatric treatment and testing while incarcerated. Judge Hanson implied that such treatment was necessary before any rehabilitation could occur.

We have independently reviewed the entire sentencing record and conclude that the sixty-year sentence imposed by Judge Hanson is not clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

The conviction and sentence are AFFIRMED.

---

1. Clifton separately argues that one of Murray's prior convictions did not qualify as a crime of dishonesty or false statement. A.R.E. 609(a). This assertion is based on the fact that the predicate crime for Clifton's 1970 breaking and entering conviction was malicious destruction of property, and not larceny. We believe Clifton's argument to be questionable. Assuming Clifton's argument to be valid on its merits, however, any error in admitting the 1970 conviction was clearly harmless, given the admissibility of Murray's other convictions.