**Kenneth Wayne CLIFTON, Petitioner,**

v.

**STATE of Alaska, Respondent.**

**No. S–1945.**

Supreme Court of Alaska.

March 11, 1988.

---

**8.** Property damage torts, for example. AS 09.-    10.050.

Sen K. Tan, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for petitioner.

Nancy R. Simel, Asst. Atty. Gen., Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for respondent.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

Kenneth Clifton was convicted of murder in the first degree, AS 11.41.100(a)(1), and misconduct involving weapons in the third degree, AS 11.61.220(a)(1). On appeal, Clifton argues that the trial court allowed the prosecution to impeach a key defense witness with prior convictions obtained more than five years before the trial, in violation of Evidence Rule 609. The court of appeals affirmed the conviction. *Clifton v. State*, 728 P.2d 649 (Alaska App.1986). We conclude that the trial court erred in allowing the prosecution to impeach the defense witness with prior convictions which were more than five years old. We reverse.

### I.

On the evening of March 2, 1984, while waiting for his father to pick him up at the Palace Hotel on Fourth Avenue, Kenneth Clifton unexpectedly met up with his friend Glen Murray. Since it was Murray's birthday, the two decided to celebrate together. As Clifton and Murray walked down Fourth Avenue, Tammy Moore, a prostitute, solicited Murray. Murray then became annoyed, and the two exchanged angry words and threats. Farrell Tanner, another Fourth Avenue prostitute, walked up and joined the argument which shortly drew to a close.

As the four dispersed, Michael Coon pulled up in a black Mustang car and conversed with Moore. Coon then left the car and approached Clifton and Murray, who were walking away from the scene of the argument.

Clifton and Murray testified that Coon approached them with his hands in his pocket. They saw a distinctive bulge in Coon's pocket and concluded that he was holding something in the pocket, which they believed was a weapon. Coon allegedly shouted at Clifton and Murray that, if they did not get their hands out of their pockets, he would shoot them. Clifton and Murray testified that Coon then tried to extract a weapon from his pocket. Clifton, allegedly acting in self defense, drew his .44 magnum handgun and fired one shot into Coon's left cheek from close range. Coon died as a result of the shot. Murray and Clifton left the scene. Clifton was arrested later that evening at the Palace Hotel.

Gregory Williams, an Army radio operator stationed at Fort Richardson, witnessed the entire incident from across the street, caused it to be reported to the police and testified at trial for the prosecution. Williams, along with Moore and Tanner, tell a different story of the killing. Williams testified that prior to the shooting, Coon's hands had been hanging by his side, and after the shooting he found no weapon on Coon's person when he was administering aid to Coon.

At trial, Murray testified for the defense. The prosecution was allowed to impeach Murray's testimony with prior convictions obtained eight to fourteen years earlier. Murray's prior convictions for crimes involving dishonesty or false statements are as follows: one count of burglary in 1970, seven counts of forgery and one count of

larceny in 1972, and two counts of larceny in 1976.

The jury returned a guilty verdict. Clifton appealed, claiming *inter alia* that the trial court abused its discretion in allowing the prosecution to impeach Murray with prior convictions which were more than five years old. The court of appeals affirmed the trial court decision. *Clifton,* 728 P.2d at 652–53. This court granted Clifton's petition for hearing with regard to the issue of whether the trial court erred in allowing the State to impeach a defense witness with prior convictions that were more than five years old.

### II.

Evidence Rule 609 provides for the impeachment of witnesses with prior convictions as follows:

(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is only admissible if the crime involved dishonesty or false statement.

(b) Time Limit. Evidence of a conviction under this rule is inadmissible if a period of more than five years has elapsed since the date of the conviction. The court may, however, allow evidence of the conviction of the witness other than the accused in a criminal case after more than five years have elapsed if the court is satisfied that admission in evidence is necessary for a fair determination of the case.

(c) Admissibility. Before a witness may be impeached by evidence of a prior conviction, the court shall be advised of the existence of the conviction and shall rule if the witness may be impeached by proof of the conviction by weighing its probative value against its prejudicial effect.

Alaska R.Evid. 609(a)–(c).

■ In determining whether prior convictions which are more than five years old are admissible for impeachment purposes, the trial court must apply a two step analy-

sis. First, the court must address the threshold question which applies whenever any prior conviction, whether or not it has been rendered within five years, is offered for impeachment. The court must initially weigh the probative value of the evidence against its prejudicial effect. Alaska R.Evid. 609(c). Second, the trial court must determine whether or not admission of the evidence is necessary for a fair determination of the case. Alaska R.Evid. 609(b).

■ The commentary to Evidence Rule 609(b) is helpful in defining when a court should admit prior convictions obtained more than five years before trial. First the commentary addresses the policies behind setting a five year limit:

The five year time limit set forth here is an attempt to balance competing concerns: concern, on the one hand, for both the privacy of witnesses and the acute danger of prejudice when a party-witness is impeached by a prior conviction, and, on the other hand, the need for the trier of fact to know whether a witness previously has demonstrated dishonesty in order to fairly assess the credibility of the witness. An assumption underlying the time limit is that older convictions are less probative than more recent ones in determining the likelihood that a witness will tell the truth.

Commentary to Alaska R.Evid. 609(b). The commentary then attempts to provide some guidance for determining when "stale"[1] convictions should be admitted; that is, when a stale conviction is necessary for a fair determination of a case. The commentary explains:

The second sentence of this subdivision provides the trial judge with the necessary discretion to ignore the time limit in the interest of justice. There may be cases, for example, in which the accused's right of confrontation will override the five year limitation. *Except in rare cases where limiting impeachment*

---

1. For purposes of this opinion, a "stale" conviction is a conviction obtained more than five

years before trial.

*as to prior convictions threatens to deny a party a fair trial or to infringe upon a constitutionally protected right, the time limit should be respected.*

*Id.* (Emphasis added.) As the commentary indicates, the trial court should relax the five year limitation and admit a stale conviction only in rare circumstances.[2] Evidence Rule 609(b) does not vest the trial court with broad discretion to admit stale convictions.

■ The trial court allowed the prosecution to impeach defense witness, Murray, with prior convictions ranging from eight to fourteen years in age, pursuant to the exception to the general five-year limitation contained in Evidence Rule 609(b). The trial court admitted the convictions into evidence after merely balancing the probative values against the prejudicial effects as required by Evidence Rule 609(c). The trial judge never made an explicit finding that the convictions were necessary for a fair determination of the case as required by Evidence Rule 609(b). The trial court erred in failing to apply the second step of the analysis which requires a finding that the evidence is necessary for the fair determination of the case.

■ Furthermore, an application of the fair determination test to Clifton leads us to the conclusion that the admission of Murray's stale convictions was not necessary to a fair determination of the case and should not have been admitted by the trial court.[3] The exclusion of the stale convictions used to impeach Murray would not have denied the State a fair trial because the State had a strong case even without the stale convictions. An eyewitness, seemingly disinterested, testified in favor of the prosecution's version of the case. Furthermore, the State could impeach Murray on the ground of personal bias.[4] We hold that, since the prior convictions were not necessary for a fair determination of the case, the admission of the convictions for the purpose of impeachment was improper.

■ Finally, we must decide whether the trial court's admission of Murray's prior convictions for impeachment purposes was harmless or prejudicial error.[5] In *Spaulding v. State*, this court held that the trial court's improper admission of evidence was not harmless error because the evidence "would have a substantial effect upon the jury's deliberations." 481 P.2d 389, 393 (Alaska 1971). In the case before us today, the trial judge himself acknowledged how devastating the evidence would be to Clifton. In fact, the trial judge commented that he believed that Clifton's "conviction or acquittal [would] stand[ ] or fall[ ] based on whether or not ... the jury believe[d] Mr. Murray." We are unwilling to find that the evidence erroneously admitted by the trial judge would not affect the jury verdict.[6] We believe that there is a very

---

2. For example, when the defendant's confrontation rights are being threatened, the trial court would want to relax the five year rule. Similarly, if the witness has been in jail for the last ten years, having no opportunity to demonstrate his rehabilitation, the trial court might admit the ten year prior conviction.

3. The commentary to Evidence Rule 609(b), discussed earlier, indicates that the five-year limit should be respected except where it would infringe upon a constitutionally protected right, or deny a party a fair trial. Here, the relevant party is the State—the party seeking to put the stale convictions into evidence. As for constitutional rights, the State has none in this context. However, as for a fair trial, we agree with the trial judge: the State, as a party in a criminal case, has a right to a fair trial.

4. We noted, in *Gonzales v. State*, 521 P.2d 512, 514–15 (Alaska 1974), that the probative value

of impeachment of general credibility by proof of prior convictions is "considerably less" than that which suggests false or distorted testimony in a particular instance, because of bias. *Id.* at 514–15.

5. Criminal Rule 47 distinguishes plain and harmless error as follows:

(a) Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

(b) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

Alaska R.Crim.P. 47.

6. At first glance, this may seem inconsistent with our holding that, since the prosecution had so much other evidence available, the prior convictions were not necessary for a fair determi-

real danger that the jurors associated in their minds the prior convictions of the witness with the accused. For the above reasons, we hold that the trial judge committed prejudicial error in admitting Murray's prior convictions.

The judgment of conviction is RE-VERSED, and the case is REMANDED to the superior court for a new trial.

RABINOWITZ, Justice, joined by BURKE, Justice, dissenting.

Assuming that the superior court erred in permitting the prosecution to impeach Murray's testimony with 1970, 1972, and 1976 crimes involving dishonesty, I disagree with the majority's holding that this ruling constituted prejudicial error.

The superior court instructed the jury that in judging the credibility and weight to be given a witness's testimony they were to consider in part "any motive of the witness not to tell the truth" as well as "any bias of the witness." In regard to impeachment of a witness by prior conviction of a crime involving dishonesty the jury was instructed as follows:

> The testimony of a witness may be discredited or impeached by showing that the witness has been convicted of a crime involving dishonesty. Such prior conviction does not render a witness incompetent to testify, but is merely a circumstance which you may consider in determining the credibility of the witness. It is the province of the jury to determine the weight to be given to any such prior conviction as impeachment.

Study of the record reveals that the prosecutor never referred to Murray's prior convictions in the course of his final arguments to the jury. What was emphasized by the prosecution in final argument was Murray's bias and motive for testifying as he did in favor of Clifton. As the majority of the court notes, "the State had a strong case even without the stale convictions." Additionally, I think it of significance that the jury had before it evidence of Murray's evasive conduct immediately after the

nation of the case. However, in the interest of protecting the defendant's rights, we should re-

shooting, evidence of Murray's inconsistent explanations of the shooting, and some indication that Murray had attempted to coerce one of the State's potential witnesses.

Given the foregoing, I would hold that the admission of Murray's past crimes in the context of this record was harmless error and thus would not mandate the setting aside of Clifton's first degree murder conviction.

spect the trial court's determination as to the effect this evidence would have on the jury.