**Wallace A. HANSEN, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–3863.**

Court of Appeals of Alaska.

Jan. 22, 1993.

---

R. Scott Taylor of Rice, Volland, & Gleason, P.C., Anchorage, for appellant.

Kenneth M. Rosenstein, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

MANNHEIMER, Judge.

Following a jury trial in the superior court, Wallace A. Hansen was convicted of second-degree murder (felony murder), AS 11.41.110(a)(3), and second-degree arson, AS 11.46.410(a). He appeals his convictions. We reverse Hansen's second-degree murder conviction; we affirm his second-degree arson conviction.

On January 21, 1990, Kenai resident John Griffiths was shot to death, his prop-

erty stolen, and his trailer burned, apparently to conceal the first two crimes. A Kenai grand jury indicted Hansen and two other men, Peter Krus and Douglas Wilson, for first-degree murder, first-degree robbery, and first-degree arson in connection with Griffiths's death.

Hansen, Krus, and Wilson were tried jointly. The trial judge gave the jury instructions on the offenses contained in the indictment: first-degree murder, first-degree robbery, and first-degree arson. In addition, over Hansen's objection, the judge instructed the jury on the offense of second-degree murder under a felony-murder theory. The jury also was instructed (without objection) on second-degree arson. No party sought an instruction on second-degree robbery.

The jury convicted Krus of the three crimes charged in the indictment. The jury acquitted Wilson of all charges. The jury acquitted Hansen of the three crimes charged in the indictment but convicted him of second-degree murder and second-degree arson.

### Sufficiency of the Evidence at Trial

■ Hansen argues that the State presented insufficient evidence at trial to support his convictions. The test is whether a reasonable fact-finder who viewed the evidence in the light most favorable to the State could conclude that the State had proved its case. *Silvernail v. State*, 777 P.2d 1169, 1172 (Alaska App.1989). Our review of the evidence at trial convinces us that the verdicts are supported by sufficient evidence.

The State presented evidence that Hansen, Krus, and Wilson were living together in the same residence. Krus had openly spoken of killing and robbing Griffiths. Hansen and Wilson had engaged in these conversations and had encouraged Krus. An hour before Griffiths was killed, Hansen, Krus, and Wilson left home together; the three men departed in Hansen's truck, with Hansen driving. Just before he left, Hansen took off his shoes and put on a pair of a roommate's shoes, a pair that was too

small for Hansen. Krus carried Hansen's handgun and used it as the murder weapon. The day after the homicide, Hansen and Wilson approached a friend and told him he should telephone Krus; in the ensuing telephone conversation, Krus asked this friend to provide a false alibi for himself, Hansen, and Wilson. Hansen and Wilson remained for this conversation and spoke with the friend about the desired alibi afterwards.

From all this evidence, a reasonable fact-finder could infer that, when Hansen drove Krus to Griffiths's trailer, Hansen knew that Krus intended to kill and rob Griffiths, and Hansen intended to promote or facilitate the killing and robbery. These findings would support Hansen's conviction as an accomplice to the murder and robbery committed by Krus. AS 11.16.110(2)(B). Moreover, evidence at trial demonstrated that Griffiths's residence was destroyed by fire contemporaneously with the murder and robbery. This fire was started by an act of arson, and the accelerant used to fuel the fire was poured either on or near Griffiths's body. From this evidence, the jury could reasonably infer that the fire was set for the purpose of destroying evidence of the murder and robbery, and that Hansen, who had both motive and opportunity, was either a principal in or an accomplice to the arson.

### Propriety of Instructing the Jury on Felony Murder

As stated above, we are reversing Hansen's second-degree murder conviction. We do this because we conclude that the jury should not have been instructed on felony murder.

Second-degree murder was not charged in the indictment. Because of this, Hansen could not be convicted of second-degree murder unless that crime was necessarily included in the offenses charged in the indictment. Alaska Criminal Rule 31(c); *State v. Minano*, 710 P.2d 1013 (Alaska 1985).

The State concedes that felony murder is not a lesser included offense of first-degree murder, since felony murder requires proof of an element not required for first-degree murder: proof that the defendant was engaged in the commission or attempted commission of another felony at the time of the homicide. The State nevertheless argues that it was proper to instruct the jury on felony murder because Hansen was indicted, not only for first-degree murder, but also for first-degree robbery and first-degree arson, two of the predicate felonies listed in the felony-murder statute, AS 11.41.110(a)(3). The State contends that the policy of Criminal Rule 31(c) was not violated because the elements of felony murder can be derived by combining selected elements of the three crimes charged in Hansen's indictment.

We reject the State's argument as flawed. The grand jury found probable cause to believe that the State could prove all the required elements of first-degree murder, first-degree robbery, and first-degree arson. However, the crime of felony murder requires proof of an additional element not included in any of these three crimes. AS 11.41.110(a)(3) specifies that a homicide is felony murder only if the death is caused "in the course of or in furtherance of [one of the listed predicate felonies], or in immediate flight from that crime". The grand jury was never asked to decide whether the State could prove that Griffiths met his death during the course of or in furtherance of the robbery or the arson. The facts of Hansen's case highlight this problem.

The State alleged that Krus and Hansen had gone to Griffiths's trailer to rob and kill him, then had committed arson to destroy evidence of these first two crimes. These facts do not support a conviction of felony-murder using arson as the predicate felony. Under the State's theory of the case, Griffiths was not killed during the commission of the arson or to further that crime. The arson was committed after Griffiths was dead; it was motivated by the desire to conceal the murder and robbery. Thus, under the State's theory of the case, even though the grand jury might validly indict Hansen for both first-degree

murder and first-degree arson, the grand jury could not indict Hansen for felony murder based on a combination of these two crimes.

We acknowledge that the facts of Hansen's case might well support a felony murder charge based on a combination of the first-degree murder and the first-degree robbery charges, since the State presented evidence that the murder and robbery were intended to be contemporaneous crimes. However, even though the extra element required for felony murder (the causal link between the robbery and the homicide) might be apparent from the evidence, the grand jury must still explicitly consider this additional element and make a finding with regard to it. *Cf. Michael v. State*, 805 P.2d 371 (Alaska 1991).

■ One of an indictment's primary functions is to notify the defendant of the charges he or she must be prepared to defend against. *Harvey v. State*, 604 P.2d 586, 588 (Alaska 1979), quoting *Thomas v. State*, 522 P.2d 528, 530 (Alaska 1974). Normally, a defendant may not be convicted of an offense that was not specified in the indictment. *Michael*, 805 P.2d at 374. The doctrine of lesser included offenses is a seeming exception to this rule, for it allows a defendant to be convicted of charges that are not specified in the indictment. But this is not truly a departure from the notice requirement, because the law countenances a defendant's conviction of a lesser offense only when the elements of the offense charged in the indictment necessarily encompass the elements of the lesser offense—that is, only when the de-

fendant's notification of the greater charge necessarily constitutes notification of the potential lesser charge as well. *See Elisovsky v. State*, 592 P.2d 1221, 1226 (Alaska 1979).

■ We recognize that the Alaska Supreme Court, by adopting the cognate approach to lesser included offenses, intended to expand the number of lesser offenses that would, by law, be "included" within a given charged offense. *Elisovsky*, 592 P.2d at 1225–26.[1] We also recognize the well-established policy of construing indictments liberally: an indictment will not be struck down simply because the text of the indictment fails to specifically recite every necessary element of the crime charged, so long as the record of the grand jury proceedings clarifies and supports the grand jury's decision to indict the defendant for the named crime. *Lupro v. State*, 603 P.2d 468, 472–73 (Alaska 1979).

■ Nevertheless, we are unwilling to expand the doctrine of lesser included offenses to the degree proposed by the State. The State suggests that an "included" crime (here, felony murder) can be cobbled from separate pieces of two or more charged crimes (here, a homicide and a predicate felony), stitched together with yet another element (the causal relationship between the homicide and the felony) that is not stated anywhere in the indictment but must be inferred from the grand jury record. Such an expansion of the lesser included offense rule stretches to the breaking point the concept that an indictment must notify the defendant of the

---

1. Under the statutory elements approach, a lesser offense is not "included" unless it is impossible *under any imaginable circumstances* for the defendant to have committed the charged crime without also having committed the lesser crime. Under the more liberal cognate approach adopted in *Elisovsky*, a lesser offense will qualify as "included" if, *under the factual allegations against the defendant*, it would be impossible for the defendant to have committed the charged crime without also having committed the lesser offense.

For example, to prove first-degree arson, the government must show that the defendant intentionally damaged "any property" by fire or explosion and placed another person at risk of injury. AS 11.46.400(a). Second-degree arson requires proof that the defendant intentionally damaged "a building" by fire or explosion. AS 11.46.410(a). Assume that a defendant charged with first-degree arson disputed the government's allegation that other people had been placed at risk. Under the *statutory elements* approach, second-degree arson would *not* be a lesser included offense, because first-degree arson can be committed upon "any property", and some types of property are not "buildings". Under the cognate approach, on the other hand, if the defendant was in fact indicted for burning a building, second-degree arson *would* be a lesser included offense.

charges to be tried. If the State wished to seek Hansen's conviction of second-degree murder under a felony murder theory, the State was obligated to indict Hansen for felony murder.[2]

For these reasons, we reverse Hansen's conviction for second-degree murder. If the State wishes to reprosecute Hansen for felony murder, the State must seek a grand jury indictment for this crime.

### Inconsistency of the Verdicts

Hansen also attacks his convictions on the ground that the jury reached logically inconsistent verdicts. In *DeSacia v. State*, 469 P.2d 369 (Alaska 1970), the Alaska Supreme Court held that, when a defendant is tried for two crimes and is convicted of one but acquitted of the other, the conviction must be reversed and the defendant re-tried if the jury's verdicts are logically inconsistent with each other.

■ Regarding his felony-murder conviction, Hansen points out that the jury convicted him of felony murder but acquitted him of first-degree robbery and first-degree arson, the two predicate felonies that the State relied on to prove that the homicide constituted felony murder. These verdicts are logically inconsistent.[3] Regarding his second-degree arson conviction, Hansen argues that the jury's decision to convict him of second-degree arson is fundamentally inconsistent with its decision to convict his accomplice, Krus, of the greater crime of first-degree arson.

The State asserts that, because Hansen did not object to the inconsistency of the verdicts in the trial court, he cannot seek relief now on appeal. *DeSacia* holds that, if there is no objection in the trial court, the issue of inconsistent verdicts can still be addressed on appeal as a matter of plain error. 469 P.2d at 373. The State nevertheless points out that this court has consistently held that a defect in the trial proceedings cannot be challenged as "plain error" unless the defendant shows that his or her defense attorney had no tactical reason to refrain from bringing the error to the attention of the trial court. *See Potts v. State*, 712 P.2d 385, 394 n. 11 (Alaska App.1985).

The State argues that Hansen's attorney had an obvious tactical reason not to object to the entry of plainly inconsistent verdicts. If Hansen's attorney had alerted the trial court to the problem, the trial court would have advised the jury that their verdicts were inconsistent, that the verdicts could not be accepted, and that the jury would have to continue their deliberations. In these continued deliberations, the jury might have convicted Hansen of first-degree robbery and first-degree arson. On the other hand, if Hansen's attorney remained silent and allowed the jury's verdicts to be entered and the jury to be discharged, the double jeopardy clause would bar Hansen's reprosecution for first-degree robbery and first-degree arson, and Hansen's felony murder conviction would be overturned on appeal.

There is considerable force to the State's argument. A defense attorney who understands *DeSacia* and who perceives the pos-

---

**2.** We do not decide whether second-degree murder under either AS 11.41.110(a)(1) or (a)(2) could be considered a lesser included offense of first-degree murder. These offenses appear to stand on a different footing; see AS 11.81.-610(c).

**3.** The State argues that the jury might have thought Hansen was guilty of attempted robbery or second-degree robbery, both of which are predicate felonies for felony murder. However, the jury was not instructed on either of these crimes. More importantly, the evidence cannot rationally support the conclusion that Hansen was innocent of first-degree robbery but guilty of attempted robbery or of second-degree (unarmed) robbery.

*See Valentine v. State*, 617 P.2d 751, 752 (Alaska 1980): "If the defendant is charged with armed robbery, for example, and the presence of a weapon is uncontested, but [the] defendant pleads insanity, no instruction on a lesser included offense of [unarmed] robbery is necessary." Hansen's case is similar to the supreme court's hypothetical. Hansen did not dispute the occurrence of an armed robbery and murder; he disputed the State's assertion that he had been an accomplice to those crimes. It therefore appears that, even if Hansen or the State had requested instructions and verdicts on the lesser offenses of either attempted robbery or second-degree robbery, the trial court could have properly denied those requests.

sibility that a jury's verdicts are inconsistent would be strongly motivated not to object to the verdicts. Such a tactical decision would normally preclude plain error review.

 However, we need not resolve the issue raised by the State. We have already concluded that Hansen's felony-murder conviction must be reversed, so that issue of jury inconsistency is moot. As to the possible inconsistency between Hansen's conviction for second-degree arson and Krus's conviction for first-degree arson, even assuming that Hansen's failure to object was not tactical, we conclude that Hansen has not shown plain error.

Hansen argues that the jury's decision to convict him of second-degree arson is logically irreconcilable with its decision to convict Krus of first-degree arson, since Hansen's guilt was premised solely on his complicity in Krus's crime. Hansen relies on a passage from the supreme court's decision in *Gray v. State*, 463 P.2d 897 (Alaska 1970). Two brothers, Dewey and Willie Gray, were charged with felony murder for killing a police officer during their armed robbery of a liquor store. Dewey Gray was armed with a handgun; it was he who shot the officer. Willie Gray was unarmed and was charged with murder under a complicity theory. *Id.* at 899–900.

Under Alaska's current law, a defendant commits felony murder when anyone other than an accomplice is killed (even accidentally) during the commission of or the immediate flight from one of the listed predicate felonies. However, in 1970, under Alaska's former criminal code, only an intentional ("purposeful") homicide qualified as felony murder. *Gray*, 463 P.2d at 902–04. The judge at the Grays' trial mistakenly told the jury that any homicide, even an accidental one, committed during the course of the armed robbery constituted felony murder. *Id.* at 901. For this reason, the supreme court reversed Dewey Gray's felony murder conviction. *Id.* at 904. The court then addressed Willie Gray's felony murder conviction:

> There is no evidence in the record that Willie was armed or that he killed Officer Strong. The only way he can be convicted ... is as an accessory to felony murder[.] Willie's guilt is dependent upon Dewey's guilt.

*Gray*, 463 P.2d at 904.

Hansen relies on this passage to assert that, whenever accomplices are tried for the same crime, the jury must return the same verdict with regard to every accomplice. This is a misreading of *Gray* and an over-simplification of the law.

The problem in *Gray* was that the jury had been given inaccurate information concerning an essential element of the crime of felony murder. Regardless of whether Willie Gray had been convicted based on his own conduct or the conduct of his accomplice brother, the jury's decision to convict the Grays of felony murder had to be reversed. Under these circumstances, the supreme court's statement, "Willie's guilt is dependent on Dewey's guilt," is dictum.

Moreover, Alaska law now specifically provides that accomplices need not be convicted of the same crime as the principal actor. AS 11.16.120(a) states:

> In a prosecution for an offense in which legal accountability is based on the conduct of another person,

> . . . . .

> (2) it is not a defense that

> (A) the other person has not been prosecuted for or convicted of an offense based upon the conduct in question or has been convicted of a different offense or degree of offense[.]

The State relies on this statute to assert that there is no legal problem presented by the jury's decision to convict Krus of first-degree arson but convict Hansen of only second-degree arson.

Professor LaFave disagrees with the State's position; he states that the "prevailing view" is to require consistency of verdicts, even under such a statute, if the principal and the accomplice are tried simultaneously. W. LaFave & A. Scott, *Substantive Criminal Law* (1986), § 6.6, Vol. 2, pp. 134–35 n. 92; and § 6.8(c), Vol. 2, pp. 159–160 n. 38. However, *LaFave* cites only two cases to support this view. An-

other text, R. Perkins & R. Boyce, *Criminal Law* (3rd ed. 1982), pp. 759–760, notes that the states have enacted a wide variety of statutes on this subject, that the courts interpreting these statutes have reached a wide variety of conclusions, and that "generalizations are hazardous".

Another approach to the problem is suggested by *Perkins & Boyce*. The authors note that "it was clearly recognized even in the time of Lord Hale that two [people] who jointly kill a third may have different degrees of guilt, because one may act with malice aforethought and the other without.... [A]s previously mentioned, an abettor may be convicted of either a higher or a lower degree of guilt than the perpetrator." *Perkins & Boyce*, p. 757 nn. 13, 14 (citing cases in which the abettor was found guilty of murder while the perpetrator was convicted only of manslaughter, and vice-versa); and pp. 761–62.

*Perkins & Boyce* advocate the view that Hansen's complicity makes him accountable for Krus's physical acts, but Hansen's culpable mental state must be determined separately. If so, then under the facts of this case and under the instructions the jury received, the jury could reasonably have concluded that Hansen should be convicted of a lesser degree of arson.

Under AS 11.46.400(a), a person commits the crime of arson in the first degree if he or she "intentionally damages any property by starting a fire or causing an explosion and by that act recklessly places another person in danger of serious physical injury." Second-degree arson, AS 11.46.410(a), is committed if a person "intentionally damages a building by starting a fire or causing an explosion."

When, as in this case, the damaged property is undisputedly a "building", the difference between first-degree arson and second-degree arson normally lies in the fact that the higher degree of crime requires proof that the defendant recklessly placed another person in danger of serious physical injury. Proof of this distinguishing element would consist of two parts: (1) that other people were actually endangered by the fire, and (2) that the defendant acted "recklessly" with regard to this circumstance.

These are the elements the State had to prove to secure Krus's conviction for first-degree arson. However, because Hansen was charged as an accomplice to the arson, the jury might reasonably have read the instructions on complicity to require that the State prove a different, higher culpable mental state to secure Hansen's conviction for first-degree arson.

The instructions on complicity informed the jury that an accomplice must "in some way associate [him or herself] with the venture, that the person participate in [the venture] as in something that he or she wishes to bring about, and that the person seek by his or her actions to make it succeed." Further, the jury was told that, when a crime requires proof of a particular result, a defendant is said to have acted "intentionally" when his or her conscious objective was to cause that result. Arguably, the jury could have interpreted these instructions to require proof that Hansen *intended* for other people to be endangered by the fire at Griffiths's trailer before he could be convicted of first-degree arson. *Cf. Echols v. State*, 818 P.2d 691, 695 (Alaska App.1991).

The State's theory of first-degree arson was that the fire endangered passersby as well as the fire fighters who were called to the scene because Griffiths's residence had a propane gas tank and because Griffiths stored a large quantity of ammunition in an out-building. We agree with Hansen that it would be logically inconsistent for the jury to conclude that the fire created this danger for purposes of judging Krus's guilt but did not create the same danger for purposes of judging Hansen's guilt. However, the jury may have reached its differing verdicts because it believed that, while Krus (and perhaps Hansen) had acted recklessly with regard to the danger posed to other people, Hansen had not intended to endanger other people.

We do not decide what culpable mental state was actually required for Hansen's conviction of first-degree arson. That issue is not before us. The precise question

raised by Hansen's claim of inconsistent verdicts is whether there is any logical way to reconcile the jury's differing verdicts with regard to him and his co-defendant Krus. The answer to that question is "yes", because the jury could reasonably have construed the jury instructions to require proof of differing culpable mental states.

We have discussed unresolved issues of statutory and common law regarding the comparative guilt of principal and accomplice. We have also noted that the jury's verdicts might be the result of their conception that the law required differing evaluations of Krus's and Hansen's culpable mental states. Under these circumstances, we find that reasonable judges could differ on the question of verdict inconsistency, and thus Hansen has not established plain error. *Marrone v. State*, 653 P.2d 672, 676 (Alaska App.1982).

### Validity of the Indictment

■ Hansen asserts that his grand jury indictment was flawed because a police officer who testified at grand jury seriously mischaracterized a statement given by Hansen's co-defendant, Wilson. The officer told the grand jury that Wilson had confessed that he and Hansen were aware of Krus's plan to kill and rob Griffiths, and that they were also aware that Krus planned to burn Griffiths's body and residence to eliminate any evidence of the first two crimes. Wilson had not said this.

Wilson admitted that Krus had spoken of killing and robbing Griffiths. However, Wilson told the officer that Krus was always getting drunk and bragging about shooting people; Wilson declared several times that he "never thought [Krus] would do it". Wilson told the officer that he, Hansen, and Krus drove to Griffiths's house and were socializing with him when, without warning, Krus shot Griffiths. Wilson told the officer that he and Hansen "wanted to get out of there so bad. [Hansen] didn't think [Krus] was going to do it either." Wilson conceded that he had fetched a gas can at Krus's request, so that Krus could burn Griffiths's body.

However, Wilson told the officer that he helped Krus only because "I wasn't about to argue with [Krus] with a god-damned gun in his god-damned hand." According to Wilson, he and Hansen sat in Hansen's truck while Krus doused Griffiths's body and the trailer with gasoline.

On appeal, Hansen asserts that the grand jury's decision to indict him was fundamentally flawed by the police officer's mischaracterization of Wilson's statement. Indeed, Hansen argues that Wilson's statement to the police (if accurately conveyed) was exculpatory evidence.

We have already held that Hansen's second-degree murder conviction must be reversed. And, as noted above, the trial jury acquitted Hansen of robbery. Thus, the validity of the portions of Hansen's indictment charging him with murder and robbery is moot. The only remaining issue is the validity of Hansen's indictment for arson.

The grand jury heard independent evidence of Krus's plans to murder and rob Griffiths, as well as testimony that Wilson and Hansen had actively participated in the discussions of these plans. The grand jury also heard testimony that, just as the three men were leaving, Krus strapped on a holster, arming himself with Hansen's gun. At the same time, Hansen changed his shoes, selecting another pair that was too small for him. This evidence suggests that Krus was about to put his plan into action, that Hansen was aware of Krus's intentions, that Hansen planned to take Krus to Griffiths's residence, and that Hansen wanted to disguise his own presence at the scene of the impending homicide.

We agree that Wilson's statement was seriously misreported to the grand jury. But the question is whether, if the grand jury had heard an accurate account of Wilson's statement, this evidence would have appreciably affected the grand jury's decision to indict Hansen for arson. *Clifton v. State*, 728 P.2d 649, 651–52 (Alaska App. 1986), *rev'd on other grounds*, 751 P.2d 27 (Alaska 1988). The crucial portion of Wilson's statement was his repeated protestation that Krus's murder of Griffiths took

him completely by surprise. To the extent that this evidence tended to exculpate Hansen, it related primarily to the murder and robbery charges against Hansen, not to the arson. In the context of the State's evidence at grand jury, we conclude that this evidence would not have appreciably affected the grand jury's decision to indict Hansen for arson.

■ Hansen also asserts that his indictment must be dismissed because the prosecutor misinstructed the grand jury on the law of complicity. Hansen did not raise this issue in the trial court, so we review it only for plain error.

Responding to a grand juror's question concerning how Hansen and Wilson might be charged for acts actually done by Krus, the prosecutor told the grand jury:

PROSECUTOR: [The State] will be alleging [that] Doug Wilson and Allen Hansen are accomplices. You don't have to find that they had the intent specifically to kill John Griffith[s]. They need only know that that was Peter Krus's intent and they then aided and abetted him, knowing that that was his intent. They can then be charged ... under the law [as] accomplices....

I expect the evidence to show, for example, that Peter Krus got to John Griffiths's residence because Allen Hansen drove him in Allen Hansen's pickup truck. I expect the evidence to show that Peter Krus was able to kill John Griffith[s] using Allen Hansen's revolver, and Allen Hansen allowed him to use the revolver. If you find that to be the evidence, ... that would be aiding and abetting, and if you find that [Hansen] had knowledge that Peter Krus was going to kill John Griffith[s] after he drove him there, using his weapon, he would also be chargeable with first-degree murder as an accomplice.... You can also be an accomplice simply by encouraging that an act be done. If you take part in it, if you participate, you go along, you encourage it, you expect to share in the monetary rewards, ... [you] are as guilty as the one [who] goes in and holds the gun[.]

Later, responding to another grand juror's question, the prosecutor elaborated on complicity:

GRAND JUROR: I have [a question]. You're—the ... first, second, and third [counts] for the, like Wilson and Hansen ...

PROSECUTOR: Um-hum

GRAND JUROR: ... would that, although they might not have had the weapon or they didn't potentially hurt Griffith[s], but they could still be charged for that ... as an accomplice?

PROSECUTOR: If you find that they ... did something to encourage Krus, if they did something to associate themselves with what Krus was going to do, they aided him in some way, if they planned to share in the proceeds, for example, they would be charged under Alaska law ... as if they did it themselves.

■ We agree with Hansen that some elements of the prosecutor's instruction to the grand jury are technically incorrect. Under AS 11.16.110(2), complicity requires proof, not just that the defendant knew of someone else's desire to commit a crime, and not just that the defendant provided aid or encouragement to that other person, but also that the defendant intended to "promote or facilitate" the crime—that the defendant intended his actions to encourage the crime or make its accomplishment easier.

If a defendant knows of another's plan to commit a crime and, with this knowledge, performs acts that aid or abet the commission of the crime, one might reasonably infer that the defendant acted with the required intent to promote or facilitate the crime, but this will not be invariably true. It is conceivable that a defendant could know of another person's desire to commit murder, and could furnish the weapon to the murderer, yet not act with the intent to kill required for first-degree murder (although the defendant's indifference to whether the victim lived or died might support a conviction for second-degree murder or manslaughter). It is also conceivable that the defendant might engage in conver-

sation with the murderer and speak words (criticism of the intended victim, for example) that have the effect of encouraging or inciting ("abetting") the murderer to commit the crime, even though this effect was unintended. However, given the absence of any evidence indicating that Hansen did not intend to help Krus commit arson, we conclude that any infirmity in the grand jury instructions was not plain error.

### The Jury Instructions on Complicity

■ We now turn to Hansen's final attack on his arson conviction. Hansen argues that the trial jury was misinstructed on the culpable mental state required to prove complicity. This culpable mental state is specified in AS 11.16.110(2):

A person is legally accountable for the conduct of another constituting an offense if

. . . . .

(2) *with intent to promote or facilitate the commission of the offense*, the person

(A) solicits the other to commit the offense; or

(B) aids or abets the other in planning or committing the offense[.]

This statute clearly distinguishes the culpable mental state of complicity (the intent to promote or facilitate the commission of the offense) from the *actus reus* of complicity (soliciting another to commit the offense, aiding another to plan or commit the offense, or abetting another to plan or commit the offense).

At Hansen's trial, neither the court nor the parties suggested that the jury be instructed using the words of this statute. Instead, the court instructed the jury that Hansen could be convicted of arson as an accomplice if Hansen "intentionally aided and [sic] abetted another who [purposely damaged a building by fire]."

On appeal, Hansen argues that this instruction should have tracked the words of the statute—that it should have informed the jury that the required culpable mental state was Hansen's "intent to promote or facilitate" the commission of arson. However, Hansen did not raise this objection in the trial court.[4] We therefore examine the jury instruction for plain error only. Alaska Criminal Rule 30(a); Alaska Criminal Rule 47(b). *But cf. Green v. State*, 579 P.2d 14, 19 (Alaska 1978), indicating that the point of error may have been waived.

The complained-of instruction was supplemented by various other instructions defining complicity. The jury was instructed that complicity is established when a defendant "knowingly and with criminal intent aids, abets, assists, or participates in a criminal act". Also, as noted above, the jury was told that an accomplice must "in some way associate [him or herself] with the venture, that the person participate in [the venture] as in something that he or she wishes to bring about, and that the person seek by his or her actions to make it succeed." Finally, the jury was told that, with regard to the result required for the commission of a crime, "intentionally" means that the person's conscious objective was to cause that result.

Given these other instructions, we conclude that the concept of complicity was adequately communicated to the trial jury; there is no plain error. In particular, we conclude that the instructions adequately communicated the concept that the jury should not convict Hansen as an accomplice to arson unless they were convinced that Hansen desired to see the arson succeed and that he performed acts in furtherance of this desire.

4. Hansen proposed an alternative complicity instruction which would have informed the jury that a person is guilty as an accomplice when that person "specifically intended to associate with [another person's] venture". We agree with the State that this proposed instruction was simply a rephrasing of the instructions the jury did in fact receive. Hansen's proposed instruction did nothing to flag the issue he raises on appeal—that the court should have instructed the jury using the culpable mental state specified in AS 11.16.110(2).

*Conclusion*

Hansen's conviction for second-degree arson is AFFIRMED, but Hansen's conviction for second-degree murder is RE-VERSED.