Shawn W. ROGERS, Appellant,

v.

STATE of Alaska, Appellee.

No. A–9991.

Court of Appeals of Alaska.

May 21, 2010.

Arthur S. Robinson, Soldotna, for the Appellant.

Timothy W. Terrell, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

MANNHEIMER, Judge.

Shawn W. Rogers appeals his conviction for manslaughter.[1] He argues that there is a fatal variance between the theory of causation that the State presented to the grand jury and the theory of causation that the trial jury apparently adopted (as suggested by the jury's questions to the court, and by the jury's verdict on a proposed aggravating factor). The State's theory of this case (both at grand jury and at trial) was that Rogers committed first-degree murder by pulling a handgun in a bar and shooting another man with the intent to kill him. The trial jury found Rogers guilty of manslaughter—apparently under the theory that, after Rogers pulled the handgun, several bystanders (including the victim) struggled with Rogers for control of the gun, and that during this struggle Rogers lost control of the gun, but the gun somehow went off, fatally wounding the victim.

For the reasons explained in this opinion, we conclude that even if the jury adopted the

1. AS 11.41.120(a)(1).

view of the case described in the preceding paragraph, this is not a fatal variance from the State's theory of an intentional shooting, and thus the jury's verdict is a valid resolution of the case.

Rogers also argues that the State improperly failed to apprise the grand jury of an exculpatory statement that Rogers made to a state trooper several hours after his arrest. For the reasons explained in this opinion, we conclude that Rogers's statement is not exculpatory (for purposes of grand jury practice).

*Underlying facts, Part 1: the parties' competing versions of the shooting*

Shawn Rogers was indicted, and brought to trial, on a charge of first-degree murder. The case arose from an altercation that took place at Fat Albert's Tavern in Beluga on the evening of July 26–27, 2004. Rogers and another man, Brian Black, were among the patrons of the tavern that night.

When Rogers arrived at the tavern, he was carrying a loaded handgun that he had taken with him earlier that day on a fishing trip. He gave this weapon to the bartender, but he retrieved the weapon shortly after "last call" was announced. Exactly what happened next was the central dispute at Rogers's trial.

The State's theory was that Rogers intentionally shot Black. The State presented evidence that, around closing time, Rogers said something provocative to Black. None of the State's witnesses could tell exactly what Rogers said, because the music in the tavern was turned up so loud. But whatever Rogers said, it caught Black's attention. Black asked Rogers, "Are you talking to me?" Rogers indicated that he was talking to Black, and then he repeated his comment.

At that point (according to the State's witnesses), Rogers stood up, drew his handgun from the holster, and pointed the gun at Black. Black said something like, "Are you pulling a gun on me, motherfucker?", and then he stood up and headed toward Rogers—apparently intending to disarm him. Two of Black's co-workers—Chuck Thome and Ron Thebeau—also converged on Rogers.

Rogers got off two shots in quick succession. One of these caused a near-contact wound in Black's side, just below his left armpit. The bullet passed through Black's lungs and aorta, then lodged near his spine. Black died soon after receiving this wound.

Rogers's gun jammed after the second shot. With Rogers unable to get off another round, Thome managed to knock the weapon from Rogers's hand and subdue him.

The defense offered a competing version of events. The defense asserted that Rogers did not threaten anyone with his gun, and that he was the victim of an attack by Black and his two friends. According to the defense, Rogers's gun went off accidentally during the struggle, and Black was shot.

Rogers took the stand at his trial and testified that he was wearing a handgun when he entered the bar, so he removed the weapon from its holster and handed it to the bartender for safekeeping. Later, when the bar was closing, he retrieved his handgun from the bartender. He tried to return the weapon to its holster, but he was unable to do so because the holster was tangled with his other clothing. At that point, without warning, Black and his friends approached Rogers and attacked him. According to Rogers, the gun went off once in his hand from the physical contact. Rogers testified that the gun was pointed toward the floor when this first shot was fired. Then Rogers lost control of the weapon. A few moments later, Rogers was thrown to the floor and knocked unconscious. Rogers asserted that he was unaware of how the second shot was fired.

*Underlying facts, Part 2: the issue of causation, and how this issue was litigated at Rogers's trial*

After the presentation of evidence at Rogers's trial was concluded, the trial judge and the attorneys discussed the proposed jury instructions. The parties agreed that the jury should be instructed on first-degree murder (the crime charged in the indictment), and on the lesser offenses of second-degree murder and manslaughter. After discussing the various culpable mental states that applied to these different degrees of

criminal homicide, the judge and the attorneys turned to the issue of proximate cause.

The prosecutor submitted proposed instructions on proximate cause because, as the prosecutor explained to the trial judge, the defense had introduced evidence suggesting that Black was shot accidentally during a struggle over the gun:

> *Prosecutor:* [T]he defense is attacking the State's case [by] indicating that the death of Mr. Black could have been caused by accident through the struggle that ensued.... The jury could find that Mr. Rogers pulled the gun [and] pointed it at Mr. Black, but did not shoot ...; rather, during the struggle that ensued, ... [either] through the victim himself pulling the gun away from the defendant, or from a third [person] intervening in the struggle and disarming the defendant, that's [how] the death of Mr. Black ... was caused.
>
> [Under that scenario,] what the case law tells us ... is [that] the defendant is responsible for ... actions that ... he has set in motion, as long as his actions were a substantial factor in causing the death.

Rogers's attorney raised two objections to the proposed instructions on proximate cause. First, the defense attorney disputed the prosecutor's assertion that, if Black was killed accidentally during a struggle over control of the gun, Rogers would be criminally responsible for the homicide. Second, the defense attorney argued that the State was changing its basic theory of the case. The defense attorney pointed out that, from the time of the initial felony complaint and indictment, the State had maintained that Black died as a result of Rogers purposely shooting him. The defense attorney argued that it would be improper for the State to now rely on a theory that Black died as a result of an accidental discharge of the gun during a struggle.

In reply, the prosecutor acknowledged that the State's theory of the case was that Rogers purposely shot Black with the intent to kill him. But the prosecutor pointed out that the jurors might conclude that the State had failed to prove its theory of the case beyond a reasonable doubt. The prosecutor argued that, if the jury was in doubt as to whether the gun accidentally discharged during the struggle between Rogers and Black and Black's co-workers, the jurors would need to understand the law of proximate cause in order to render a proper verdict.

After hearing these arguments, the trial judge concluded that it would be improper to instruct the jury on the law of proximate cause. The judge gave three reasons for his decision.

First, the judge ruled that it would be improper to hold Rogers accountable for the homicide simply because he unlawfully carried a firearm into a bar.

It should be noted that this was *not* the prosecutor's argument. Rather, as shown by the excerpt quoted above, the prosecutor argued that Rogers could be held accountable for the homicide if Rogers pulled the gun and pointed it at Black, and then, when Black and his co-workers attempted to disarm Rogers, the gun went off accidentally.

Second, the trial judge ruled that any jury instruction on proximate cause (*i.e.*, any instruction on the legal doctrine that Rogers could be held liable for Black's death if Rogers's actions were a substantial factor in causing Black's death) would effectively lower the State's burden of proof. The judge declared:

> *The Court:* When we start talking about "proximate causation", we're using a term that's shared with civil law, [with] tort law, where the standard of proof is preponderance of the evidence. The [standard of proof] in this case [is] beyond a reasonable doubt. And I'm not saying that the State is suggesting that I should intentionally or knowingly lower the standard of proof, but when we get into ideas involving proximate causation, ... then we get into an area [where] we are dangerously close to lowering the standard of proof for the government [in a criminal case].

As we explain in the next section of this opinion, the trial judge's analysis of this issue is mistaken. Instructing a jury on the applicable law of causation does not alter the burden of proof that governs a criminal case.

Finally, the judge declared that the "substantial factor" rule of causation did not apply to a charge of first-degree murder—although the judge conceded that this doctrine of causation might apply to the lesser included offenses of second-degree murder or manslaughter. As we explain in the next section of this opinion, the judge's analysis of this issue was also mistaken. The same law of causation applies to all degrees of criminal homicide—indeed, to all criminal charges that require proof of causation.

The next morning, just before the attorneys delivered their summations to the jury, the prosecutor asked the trial judge to reconsider his decision regarding whether to instruct the jury on causation. In conjunction with his request for reconsideration, the prosecutor presented the court with re-drafted instructions on the doctrine of proximate cause.

According to the prosecutor, these re-drafted instructions clarified two issues: first, that the State was not obliged to prove that Rogers's actions were the sole cause of Black's death; and second, that if the jurors believed that Rogers pulled the gun and threatened Black, and that Black was shot during the ensuing struggle, then Rogers could be held criminally responsible even though he did not have his finger on the trigger when the gun went off. As the prosecutor explained:

> *Prosecutor:* [Rogers's act of] pointing the gun would be unlawful conduct. And the jury needs to understand [that] a third person['s] or a victim['s] [act of] intervening [after] the defendant's pulling of the gun ... does not ... absolve [the defendant] of criminal liability.

In response, the defense attorney renewed his argument that the State was improperly trying to alter its theory of the case "in the middle of the stream". The defense attorney noted that, all along, the State had contended that Rogers deliberately shot Black. The defense attorney then asserted that, because the State had never given notice that it might argue an alternative version of events, "[it] would be highly prejudicial, highly unfair, [and] probably a violation of due process" if the State was allowed to argue that Rogers

could be found guilty even if he did not deliberately shoot Black.

After considering these arguments, the trial judge again concluded that instructing the jury on the doctrine of proximate cause would effectively lower the State's burden of proof. In addition, the judge concluded that the facts of Rogers's case did not raise any issue of causation—and, thus, any instruction on proximate cause would only tend to confuse the jurors. For these two reasons, the judge again declined to instruct the jury on causation—although the judge stated that he might revisit this issue "if ... the jury has a question".

The parties then delivered their summations to the jury.

The prosecutor argued that Rogers deliberately shot Black, and that Rogers acted with the intention of killing Black.

The defense attorney, on the other hand, suggested that Rogers was innocently trying to get his gun back into its holster, and that Black and his friends—with their judgement "impaired [by] booze and pot"—mistakenly thought that Rogers was threatening them with the gun, so they attacked him, and in the struggle that ensued, the gun accidentally discharged, causing Black's death.

The defense attorney then explicitly invoked the doctrine of causation. He told the jury that, not only had the State failed to prove first-degree murder, but the State had also failed to prove either of the potential lesser offenses (second-degree murder and manslaughter) "because they have failed to prove beyond a reasonable doubt that Shawn [Rogers] caused the death of Brian Black".

In his reply argument, the prosecutor responded to the defense attorney's assertion that Rogers had not caused Black's death. The prosecutor argued that even if the jurors did not believe that Rogers was guilty of deliberately shooting Black, Rogers could nevertheless be found guilty of a lesser degree of homicide because Rogers's act of threatening Black with a handgun was the event that set the homicide in motion:

> *Prosecutor:* [P]ulling out the gun [and] pointing it at another person across the

bar, intoxicated people, the person across the bar intoxicated, other people in the bar are intoxicated, what's foreseeable there? Someone is going to rush you. That's certainly a likely possibility, a foreseeable possibility. Someone's going to rush you and attempt to disarm you. That's what happened in this case[, and it was] certainly a foreseeable result of the defendant's conduct.

. . .

[The defense attorney is] trying to tell you [that] if Mr. Rogers didn't mean to [shoot Black] and didn't mean to pull the trigger, and [then,] in . . . the struggle for the gun, it goes off, he's not responsible; he hasn't committed the offense. That's not correct—because he set in motion the chain of events that were foreseeable: that another person would try and intervene.

Here, . . . as a result of [Rogers's] conduct in pointing the gun across the bar, . . . he set in motion the chain of events that were reasonably foreseeable—when Mr. Black approached him . . . [and] tried to disarm him, or someone else tried to disarm him, and that's when Mr. Black was shot. Mr. Rogers is still responsible for the death, because it's his conduct that set in motion that chain of events. It's his conduct that was a substantial factor in setting in motion those events.

Even though the defense attorney had actively opposed the prosecutor's request for a "substantial factor" causation instruction, the defense attorney made no immediate objection to the prosecutor's argument.

A few minutes later, however, after the prosecutor finished his rebuttal summation, the trial judge held a bench conference. During this conference, the defense attorney objected that the prosecutor's remarks (quoted above) openly invited the jury to apply a "substantial factor" test when deciding whether Rogers was guilty of a criminal homicide.

The trial judge overruled this objection. The judge declared that he had already correctly instructed the jurors on all the issues necessary for their decision, and the judge noted that the jury instructions included the admonition that the jurors were to ignore the remarks of the attorneys if the attorneys were mistaken in their view of either the law or the evidence.

Shortly after this ruling, the alternate jurors were excused and the remaining twelve jurors were allowed to begin their deliberations.

On the following business day, shortly before one o'clock in the afternoon, the trial judge convened the parties to consider a note that the court had received from the jury earlier that morning. In their note, the jurors asked the court to give them further instruction on the issue of causation. The note (with its original emphases and internal quotation marks) read:

In regards to [the charge of] manslaughter, if the jury agrees that Shawn W. Rogers "recklessly *contributed* to the death of Brian Black", is that the same as "recklessly *caused* the death of Brian Black"? If [Rogers's] recklessness contributed to the death, is that equal to caused the death? [Or] does it need to be *all* his fault?

When the trial judge asked the attorneys to give their views on how the jury's question should be answered, the prosecutor renewed his request for a "substantial factor" instruction. The prosecutor noted that, although the law did not require the State to prove that Black's death was entirely Rogers's fault, it would be wrong for the jury to convict Rogers simply because his actions "contributed" in some slight way to Black's death. Instead, the law required the State to prove that Rogers's conduct was a "substantial factor" in causing Black's death. Accordingly, the prosecutor asked the trial judge to instruct the jury on this doctrine of causation.

The defense attorney argued (incorrectly, as we shall explain) that the State was required to prove that Black's death was entirely Rogers's fault—and, thus, it would be error to instruct the jury concerning the "substantial factor" test.

After hearing these arguments, the judge decided to instruct the jury on the "substantial factor" test for causation. The judge acknowledged that he had earlier refused to

instruct the jury on this legal doctrine, but he stated that he had changed his mind, now that the jury was specifically asking about this issue.

The judge also noted that the defense attorney's position on the issue of causation was wrong: the State was *not* required to prove that the homicide was entirely Rogers's fault, but rather only that Rogers's conduct was a substantial factor in bringing it about.

The trial judge then gave the following instruction to the jury:

A criminal defendant can be held responsible only for injuries that "result from" or are "caused by" his conduct. But the defendant's conduct need not be the sole factor in producing the injury. Rather, the test is whether the defendant's conduct was a "substantial factor" in bringing about the injury. Since a defendant's conduct need not be the sole cause of the injury, a defendant will be held accountable for an injury or death resulting from his conduct even though it may be shown that the negligence of some other person also contributed in a substantial degree to causing the injury or death. Contributory negligence of the victim does not constitute a defense to criminal charges.

(The trial judge then added a supplemental instruction which told the jurors—incorrectly—that the "substantial factor" test for causation "does not apply to criminal offenses that require [proof that] the defendant act[ed] intentionally[, such as] Murder in the First Degree ... or ... Murder in the Second Degree [under the theory] that the defendant [acted with] the intent to cause serious physical injury".)

The following morning, the jury returned its verdicts in Rogers's case. The jurors acquitted Rogers of first-degree murder and second-degree murder, but they found him guilty of manslaughter.

Because manslaughter is a class A felony to which the presumptive sentencing law applies, the court then asked the jury to deliberate on two aggravating factors that had been proposed by the State: aggravator (c)(4)—that Rogers "employed a dangerous instrument in furtherance of the offense"; and aggravator (c)(6)—that Rogers's conduct "created a risk of imminent physical injury to three or more persons". *See* AS 12.55.155(c) and (f)(2).

During its deliberations on these two aggravators, the jury posed several questions to the court. One of these questions asked for a clarification of aggravator (c)(4). The jury asked, "In regards to [aggravator (c)(4)], does' [in] furtherance of the offense' [require proof that] he pulled the trigger for *the* shot that killed Brian Black[?]" (Emphasis in the original)

After listening to the arguments of the parties on this issue, the trial judge concluded that the statutory definition of the aggravator, AS 12.55.155(c)(4), was unclear on this point, and that there were two reasonable interpretations of the aggravator—so the judge adopted the interpretation more favorable to Rogers. That is, the judge ruled that, under the circumstances of Rogers's case, aggravator (c)(4) required proof that Rogers personally pulled the trigger to produce the gunshot that killed Black. The judge also reminded the jurors that their decision on this point had to be unanimous.

After receiving this supplemental instruction, the jury resumed its deliberations and, ultimately, the jury found that the State had failed to prove aggravator (c)(4).

*The law of causation in criminal cases*

■ As the prosecutor correctly argued at Rogers's trial, and as the trial judge ultimately told the jury, a defendant can be held criminally responsible for an injury or death if the defendant's conduct was a substantial factor in causing that injury or death. The law does not require the government to prove that the defendant was solely responsible for the injury or death. *See Johnson v. State,* 224 P.3d 105, 109–111 (Alaska 2010); *State v. Malone,* 819 P.2d 34, 36 (Alaska App.1991).

■ One type of joint causation that courts frequently encounter is the situation where a defendant launches an attack on another person and (in response) the intended victim, or the victim's relatives or friends, or other bystanders take defensive measures

to impede or prevent the attack. At common law, and under today's law as well, "any response of a human being to harm or threat of harm is [viewed by the criminal law as] a consequence of whatever produced [the] harm or threat". Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* (3rd ed. 1982), p. 794.

■ Thus, for instance, if a person "grabs a firearm which has suddenly been pointed at him", acting "in the effort to save himself from apparent death or great bodily injury", and if "the force thus exerted by [the victim] causes a fatal discharge not intended by the pointer, the act of pointing the weapon has [nevertheless] caused the death." *Id.* at 795. This is because, "[i]f a loaded weapon is pointed at another at close range[,] it may be foreseeable that he may grab for it and perhaps cause a discharge in this way." *Id.* at 796.

This same rule of causation applies when the victim's defensive action is to try to escape. On this point, see the example given in Wayne R. LaFave, *Substantive Criminal Law* (2nd ed. 2003), § 6.4(f)(4), Vol. 1, p. 483: "Suppose that A approaches B with a deadly weapon and a murderous intent to kill, so that B, in order to escape, 'voluntarily' jumps out a window, or . . . into a ravine, or plunges into a river, with fatal consequences to B. [In such instances,] A is . . . guilty of murdering B."

■ These examples from *Perkins & Boyce* and from *LaFave* illustrate another crucial aspect of the law of causation: contrary to the trial judge's ruling in this case, the doctrine of causation—including the "substantial factor" test for assessing causation—applies to *all* offenses that require proof of causation, regardless of the culpable mental state that must be proved to establish the offense. Immediately after describing the example that we quoted two paragraphs above, the authors of *Perkins & Boyce* add the following explanation:

The [one who pointed the firearm] will not necessarily be criminally responsible for the death because his menacing act may have been justified or excused; but there has [nonetheless] been [a] homicide which the law imputes to him [as a matter of causation].

*Perkins & Boyce*, p. 795.

■ In other words, when a defendant is charged with criminal homicide, the government must invariably prove that the defendant's conduct was a substantial factor in causing the victim's death. But even though causation may be proved, the defendant's guilt or innocence (or level of guilt) will hinge on the defendant's culpable mental state and/or the surrounding circumstances.

■ Returning to the example cited in *Perkins & Boyce*, if the defendant pointed the firearm at the victim with the intent of killing him (or of killing someone else), then even if the firearm discharged by accident during the struggle for control of the weapon, the defendant could properly be found guilty of first-degree murder. On the other hand, if the defendant only intended to frighten the victim, or was merely reckless in handling the gun, then the defendant might properly be found guilty of manslaughter. Or, as the passage from *Perkins & Boyce* points out, if the defendant was completely blameless in pointing the gun, then the defendant would be guilty of no crime, even though the defendant's conduct was a substantial factor in causing the homicide.

■ In other words, as this Court stated in *Malone*, "the general rule [is] that a defendant who acts *with the required culpable mental state* will be held criminally responsible for injuries [or deaths] that result from other people's normal or foreseeable reactions to his conduct." 819 P.2d at 36 (emphasis added).

■ In *Riley v. State*, 60 P.3d 204 (Alaska App.2002), this Court recognized an analogous doctrine that applies when a criminal prosecution is based on a theory of complicity. The doctrine of complicity supplies the rules for determining when one person can be held criminally accountable for the conduct of another person. But each accomplice's culpable mental state must be adjudged separately:

Take, for instance, the situation where two defendants are jointly accountable for a criminal homicide—one because he person-

ally struck the fatal blow or inflicted the fatal wound, and the other under a theory of complicity because he encouraged or assisted the homicidal act. If one of the defendants acted in cold blood (*i.e.,* with malice afore thought) while the other acted in the heat of passion, the one who acted with malice would be guilty of murder and the one who acted in the heat of passion would be guilty only of manslaughter. This was true regardless of which defendant was the perpetrator and which the accomplice. *See Perkins & Boyce,* pp. 753, 757; [Wayne R. LaFave & Austin W. Scott Jr., *Criminal Law* (1986)], § 6.7(c), Vol. 2, pp. 144–45.

*Riley,* 60 P.3d at 207.

■ In conclusion, the law of causation—*i.e.,* the rules that define when a defendant's conduct will be deemed to have "caused" a particular result for purposes of the criminal law—applies to all offenses that require proof of causation, from first-degree murder down to the most minor misdemeanor. But, standing alone, the fact that the law views the defendant's conduct as having caused the result specified in a criminal statute does not mean that the defendant can be convicted of violating that criminal statute. The government must prove that the defendant acted with the culpable mental state(s) required by the statute, and the government must prove the existence of any surrounding circumstances specified by the statute.

■ Before turning to the specific issues raised in Rogers's appeal, we need to address one further point relating to the law of causation. Contrary to the trial judge's ruling in this case, the doctrine of causation has nothing to do with the government's burden of proof. The government always bears the burden of proving the elements of a criminal case beyond a reasonable doubt. The rules of causation help to explain *what* the government must prove.

*An introduction to Rogers's two arguments that it was fundamentally unfair to allow the jury to return a verdict of manslaughter based on the theory that Rogers merely pointed his handgun at Black, and that the gun accidentally discharged when*

*Black and his co-workers struggled with Rogers*

In Rogers's brief to this Court, he does not take issue with any of the propositions of law discussed in the preceding section of this opinion. Rogers does not dispute that a person can be held criminally accountable for a homicide if their conduct was a "substantial factor" in causing that homicide. More specifically, Rogers does not dispute that, as a general proposition, a person can be convicted of manslaughter (or of some other degree of criminal homicide) if they point a firearm at another person and, in response, the other person takes defensive measures which cause the gun to discharge accidentally.

Instead, Rogers argues that it was fundamentally unfair, under the facts of his case, for the jury to convict him of manslaughter (or convict him of any other degree of criminal homicide) if the jurors concluded that Rogers did not deliberately shoot Black, but merely pointed the gun at Black, and that the gun discharged by accident during the ensuing struggle.

Rogers's first argument is based on the right to grand jury indictment guaranteed by Article I, Section 8 of the Alaska Constitution. Rogers contends that his right to grand jury indictment was violated because (1) the State asked the grand jury to indict Rogers for murder based on the theory that Rogers deliberately shot Black, but later, at the conclusion of the jury trial, (2) the prosecutor argued an alternative theory of events in response to the defense evidence suggesting that Rogers's handgun might have discharged accidentally during the struggle. Rogers argues that, if the trial jury found him guilty of manslaughter based on the theory that the gun discharged accidentally during the struggle, this would be a fatal variance from the grand jury's indictment.

Rogers's second argument is an alternative argument, based on the fact that the trial judge initially refused to instruct the trial jurors on the "substantial factor" test for causation. Rogers contends that, even if his grand jury variance argument is wrong, his trial was nevertheless unfair because, when Rogers's defense attorney delivered his summation to the jury at the end of the trial, the

defense attorney detrimentally relied on the trial judge's ruling—*i.e.,* detrimentally relied on the fact that the jurors would not be instructed on the applicable law of causation.

It is important to note that Rogers does not actually assert that the trial judge's initial ruling was *correct.* Rather, Rogers argues that he is entitled to a new trial because, even if the judge was wrong when he declined to instruct the jurors on the pertinent law of causation, Rogers's defense counsel relied on that ruling. Here is the pertinent portion of Rogers's opening brief to this Court:

> [When] making his closing argument, Rogers' counsel could reasonably rely on [the trial judge's ruling] that the jury would not be allowed to consider the substantial factor causation test [when it] determin[ed] [the] defendant's guilt[.] ... Rogers was entitled to make his jury argument on the assumption that [a] substantial factor test instruction would not be submitted to the jury.

*Rogers's argument that his conviction for manslaughter constitutes a fatal variance from the grand jury indictment*

As we have already explained, the jury acquitted Rogers of murder but convicted him of manslaughter. And later, when the jurors deliberated on the State's proposed aggravating factors, the jurors rejected aggravator (c)(4) after the trial judge instructed them that (c)(4) required proof that Rogers personally fired the shot that killed Black. Rogers relies on these verdicts to argue that the jurors must have convicted him of manslaughter based on a view of the evidence that the prosecutor discussed during his rebuttal summation: the theory that Rogers pointed his gun at Black but did not fire the weapon, and that the weapon discharged accidentally during the struggle that ensued between Rogers and Black and his co-workers.

Rogers contends that, if the jury did in fact convict him of manslaughter under this theory, then there is a fatal variance between the trial jury's verdict and the offense for which Rogers was indicted by the grand jury.

■ Obviously, the offense for which Rogers was indicted (first-degree murder) is different from the offense for which he was convicted at trial (manslaughter). But under Alaska Criminal Rule 31(c), and under this Court's decision in *Blackhurst v. State,* 721 P.2d 645, 649–650 (Alaska App.1986), a criminal defendant is on notice, as a matter of law, that the State is entitled to ask the trier of fact to find the defendant guilty of a lesser offense necessarily included within the charged offense.

■ Under Alaska law, the "cognate" test is employed to evaluate whether a lesser offense is "included" within the charged offense. *Elisovsky v. State,* 592 P.2d 1221, 1226 (Alaska 1979). Under the cognate test, the question of whether a lesser offense is "included" within the charged offense is not answered merely by looking at the elements of the two offenses. Rather, the cognate test looks to the particular facts of the case. *Ibid.* As the Alaska Supreme Court explained in *State v. Minano,* 710 P.2d 1013, 1016 (Alaska 1985), "Whether [a] lesser offense is necessarily included [in the charged offense] is to be viewed from the perspective of the facts charged in the indictment, in light of the evidence actually presented [at the trial]."

■ In Rogers's case, the evidence that would justify a verdict of manslaughter is a combination of the evidence that the State presented and the evidence that Rogers presented. The State, for its part, presented evidence that Rogers drew his weapon, pointed it at Black, and then—as Black and his co-workers converged on Rogers, attempting to disarm him—Rogers deliberately shot Black. Rogers, on the other hand, presented evidence that he had the gun in his hand, but was not threatening anyone with it, when Black and his co-workers physically attacked him—and that, during this struggle, the gun discharged accidentally.

From the jury's verdicts, it appears that the jury may have accepted the State's version of the initial portion of the incident (*i.e.,* the State's allegation that Rogers drew his weapon and pointed it at Black), but the jury accepted Rogers's version of the latter portion of the incident (*i.e.,* Rogers's assertion

that he never deliberately shot the gun, and that the gun accidentally went off during his struggle with Black and his co workers). Under this view of the facts, the jury could reasonably reach a verdict of manslaughter; that is, the jury could reasonably find (1) that Rogers caused Black's death, and (2) that Rogers acted recklessly with respect to the possibility that his conduct might result in human death.

In other words, this resolution of the case—a verdict of manslaughter—flowed directly from the evidence presented at Rogers's trial. It would therefore appear (as a matter of law) that Rogers was on notice, going into the trial, that if the jury heard his testimony and only believed portions of it, the jury might return a manslaughter verdict based on the view of the evidence that we have just described.

Rogers argues against this result, relying primarily on the Alaska Supreme Court's decision in *Michael v. State*, 805 P.2d 371 (Alaska 1991).

The defendant in *Michael* was indicted for first-degree assault for having caused serious physical injury to his infant daughter, either personally or acting as the accomplice of his wife. *Id.* at 372. The trial judge (sitting as the trier of fact) found that Michael's wife was the one who injured the child; the judge concluded that the State had failed to prove either that Michael personally inflicted injury on the child or that Michael acted as his wife's accomplice. *Ibid.* Nevertheless, the trial judge found Michael guilty of the lesser offense of second-degree assault under the theory that (1) Michael knew that his wife was assaulting the child; (2) because he was the child's father, Michael was under a legal duty to protect his child from his wife; and (3) Michael breached this duty. *Ibid.*

The supreme court concluded that there was a fatal variance between the crime for which the grand jury indicted Michael and the crime for which he was convicted; in the words of the court, Michael "was convicted for a crime never charged by the grand jury". *Id.* at 374.

On its face, this statement seems paradoxical: the grand jury indicted Michael for first-degree assault, and he was convicted of the lesser offense of second-degree assault. But what the supreme court meant was that the theory of criminal liability that the grand jury relied on to indict Michael for first-degree assault was significantly different from the theory of liability that the trial court relied on to convict Michael of second-degree assault.

■ Normally, bystanders are not responsible (as a legal matter) for criminal acts that they witness, even if these bystanders might easily have intervened and prevented the crime or saved the victim at no danger to themselves. *See* Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* (3rd ed. 1982), p. 742. The exception to this rule is if the bystander "owes some special duty of protection to the intended victim". *Ibid.*

At common law, parents owed a duty of protection to their children. *Perkins & Boyce* at 662. And, in *Michael*, the supreme court apparently acknowledged that this duty continues to exist under Alaska law—because the supreme court declared that the State's evidence in *Michael* would have justified the grand jury in indicting Michael for assault under this theory:

> Had the grand jury chosen to do so, it certainly could have indicted Steven Michael for second degree assault, for failing to protect his child. Michael's failure to carry out his parental duty was clear from the evidence.

*Michael*, 805 P.2d at 374. But the supreme court reversed Michael's conviction because "the grand jury made no such charge in the indictment". *Ibid.*

In other words, Michael's status as the child's parent, and his concomitant duty to protect the child from his wife's assaultive behavior, was an essential element of Michael's conviction for second-degree assault. Michael's status as the victim's parent set him apart from other bystanders; it allowed the State to charge him with assault based on his inaction. Absent this factor, Michael would not have been criminally responsible for failing to prevent his wife's abuse of the child.

The supreme court reversed Michael's conviction because, even though the State presented evidence to the grand jury that easily would have supported a finding that Michael was the victim's parent (indeed, this fact was undisputed), the State neglected to ask the grand jury to make this finding. As the supreme court noted in the concluding footnote of its opinion, "The result in this case illustrates the continuing importance of careful pleading under Alaska's criminal law." *Michael*, 805 P.2d at 374 n. 13.

This Court reached a similar result in *Hansen v. State*, 845 P.2d 449, 452–54 (Alaska App.1993).

The defendant in *Hansen* was indicted for first-degree murder, first-degree robbery, and first-degree arson. *Id.* at 451. The State's theory of the case was that Hansen (and his co-defendants) committed the murder and the robbery, and then set fire to the victim's house in an effort to conceal these crimes. *Id.* at 452.

When Hansen's case was submitted to the jury, the trial judge granted the State's request for a jury instruction on second-degree murder under a felony murder theory. *Id.* at 451. We held that this was error—because a charge of felony murder requires an element that was not included in the other charges for which Hansen was indicted. *Id.* at 452–54.

Specifically, even though the grand jury found all of the required elements of first-degree murder, first-degree robbery, and first-degree arson, the crime of felony murder requires proof of an additional element not included in any of these three crimes— the requirement that the victim's death be caused "in the course of or in furtherance of [one of the listed predicate felonies] or in immediate flight from that crime". AS 11.41.110(a)(3). As we noted in *Hansen*, "[t]he grand jury was never asked to decide whether the State could prove that [the victim] met his death during the course of or in furtherance of the robbery or the arson." 845 P.2d at 452.

As the supreme court did in *Michael*, we acknowledged in *Hansen* that the State's grand jury evidence might easily have supported an indictment for felony murder—*i.e.*, the evidence would have supported a finding that the victim was killed during the course of, or in furtherance of, the robbery. *Id.* at 453. We added, however, that "even though the extra element required for felony murder (the causal link between the robbery and the homicide) might be apparent from the evidence, the grand jury must still explicitly consider this additional element and make a finding with regard to it. *Cf. Michael v. State*, 805 P.2d 371 (Alaska 1991)." *Hansen*, 845 P.2d at 453.

Thus, in both *Michael* and *Hansen*, the problem was that the grand jury did not make a finding with respect to all of the necessary elements of the crimes for which the defendants were convicted.

Rogers, however, asks us to interpret *Michael* in a significantly broader fashion. According to Rogers, *Michael* stands for the proposition that a trial jury has no authority to convict defendants of the crimes for which the grand jury indicted them (or for a necessarily included lesser crime) if the trial jury's view of the evidence—in particular, its view of the defendant's actions—differs significantly from the view of the evidence adopted by the grand jury.

With regard to the specific facts of his case, Rogers argues that *Michael* prohibited his trial jury from finding him guilty of first-degree murder (the crime for which he was indicted), or guilty of any lesser degree of criminal homicide, if the trial jury disagreed with the grand jury's assessment that Rogers deliberately shot Black.

As we explained earlier in this opinion, if Rogers pointed his handgun at Black, and if Black and his co-workers then attempted to disarm Rogers, and Black was killed when the gun accidentally discharged during this struggle, Rogers might properly be found to have caused Black's death. If the jury concluded that Rogers, when he pulled his gun, intended to kill Black (or anyone else), then Rogers might properly be found guilty of first-degree murder. Similarly, if the jury concluded that Rogers deliberately pointed his gun at Black, without an intent to kill but with reckless disregard for the risk of death,

then Rogers might properly be found guilty of manslaughter.

As we also explained earlier, Rogers does not dispute these propositions as general statements of law. But he argues that, under the supreme court's decision in *Michael*, his trial jury was prohibited from returning verdicts like these—because the grand jury that indicted him did not expressly anticipate the possibility that Rogers did not deliberately fire his gun at Black, and that Black died instead from an accidental discharge of the weapon that occurred while Black and his co-workers were struggling with Rogers.

We do not interpret *Michael* and *Hansen* to stand for the rule that a trial jury has no authority to convict a defendant of a felony if the jury's verdict is premised on a view of the evidence—more specifically, a view of the defendant's conduct—that is different from the grand jury's.

First, as a practical matter, a trial jury generally hears a much fuller presentation of the evidence than a grand jury. In particular, a trial jury will hear the cross-examination of the government's witnesses, and will often hear the defendant's witnesses. The trial jurors will then have to sort out, from the competing testimony, the version of events that they believe is proved. If, as was apparently true in Rogers's case, the trial jurors conclude that the State's theory of the defendant's conduct is only partially accurate, then—under the rule that Rogers proposes—the jurors would not be able to return a verdict on a lesser offense, but would instead have to acquit the defendant.

■ We doubt that the supreme court intended *Michael* to require such results. Alaska has long recognized that the proof ultimately adduced at a criminal trial may differ in significant ways from the evidence presented to the grand jury, and that the trial jury may legitimately reach a different view of events from the one represented in the grand jury indictment.

For example, in *Miller v. State*, 866 P.2d 130 (Alaska App.1994), the defendant was originally indicted on the theory that he was guilty of robbery as an accomplice, because he was the getaway driver in the robbery.

But at trial, a witness testified that Miller was one of the two men who entered the residence and robbed the occupants, and that a third man named "Bill" had driven the getaway car. *Id.* at 135–36.

On appeal, Miller argued that the jurors should have been instructed that they could convict him only if they believed that he was an accomplice (as the State originally alleged), and not if they found that he was one of the principal robbers. We rejected Miller's argument:

> [T]he legal distinction between principals and accomplices has long been abrogated in Alaska. *See* AS 11.16.110. *See also Morris v. State*, 630 P.2d 13, 15–16 (Alaska 1981); *Machado v. State*, 797 P.2d 677, 685–86 (Alaska App.1990). It is well-settled that a defendant charged as a principal may be convicted as an accomplice; the converse is also true.

*Miller*, 866 P.2d at 137 (footnote and citations omitted).

The supreme court's decision in *Elisovsky v. State*, 592 P.2d 1221 (Alaska 1979) (the case in which the supreme court adopted the "cognate" approach to lesser included offenses) illustrates this same principle.

The defendant in *Elisovsky* was indicted (under Alaska's former criminal code) for the offense of assault with a dangerous weapon. The State alleged that Elisovsky pointed his rifle at two Cordova police officers who attempted to intervene in a dispute between Elisovsky and his wife. *Id.* at 1223. But at Elisovsky's trial, the jury heard three different versions of this event:

> As the police arrived, Elisovsky was taking his rifle and gear out of the rear of the couple's station wagon. Both police officers testified that [Elisovsky] pointed the rifle at them[,] and that [his wife] Jackie pushed the muzzle of the gun to the ground. Elisovsky testified that he was taking the rifle and other gear out of the car for the purpose of spending the night on a friend's boat and was merely planning to stand the rifle beside the car. Jackie testified that she ... grabbed the barrel of the rifle to push it down, but [she] believed

**1240**

that Elisovsky was only brandishing the gun and had not pointed it at anyone. *Elisovsky*, 592 P.2d at 1223.

The question presented in *Elisovsky* was whether the trial judge should have honored the defendant's request to instruct the jury on the lesser offense of careless use of firearms. The supreme court concluded that the jury should have been instructed on this lesser offense:

> In the present case, there is a conflict in the testimony as to whether Elisovsky ever intentionally pointed the weapon at any person. The officers testified that he pointed the rifle directly at them. Elisovsky testified ... that he intended to point the gun at no one but merely wanted to stand it up alongside the car. [His wife's] version was that the muzzle of the gun was raised slightly and that she pushed the muzzle to the ground. From this conflicting evidence[,] the jury could have believed that the rifle was intentionally pointed at the [officers, but] without malice.

> Evidence was thus presented that the defendant committed only the lesser offense of careless use of a firearm.

*Elisovsky*, 592 P.2d at 1226.

Although the issue was not squarely raised in *Elisovsky*, it is clear that the decision in *Elisovsky* implicitly rests on the notion that a trial jury is entitled to base its verdict on a view of the defendant's conduct that differs from the view adopted by the grand jury.

■ Indeed, as this Court noted in *Ragsdale v. State*, 23 P.3d 653, 659 (Alaska App. 2001), even the trial jury itself "ordinarily does not have to agree on a single interpretation of the facts of a particular criminal episode."

For example, in *Hilbish v. State*, 891 P.2d 841 (Alaska App.1995), the defendant was prosecuted for the first-degree murder of her long-time boyfriend. The evidence was sufficient to prove either that Hilbish personally shot her boyfriend or that she "intentionally aid[ed] another person in [the] planning or commission of the murder." *Id.* at 853. This Court held that Hilbish was properly convicted of this offense even if the jurors were not unanimous in their view of the facts:

> Hilbish objects that the jury [should not have been] instructed on accomplice liability [because,] in Hilbish's view, the evidence was insufficient to establish her guilt as an accomplice, even if it might have been sufficient to prove [her] guilt as a principal. This argument lacks merit. Under the evidence, fair-minded jurors could reasonably have found beyond a reasonable doubt that if Hilbish was not a principal, then she must have been an accomplice— that is, that [the victim was] intentionally killed by Hilbish or by someone acting at her behest and with her active and intentional assistance. The distinction between an accomplice and a principal has long been abrogated, *see Miller v. State*, 866 P.2d 130, 137 (Alaska App.1994), and when [the evidence] suffices to establish the defendant's guilt under either theory, the jury need not be unanimous in deciding whether the defendant acted as a principal or as an accomplice. [*State v.*] *McDonald*, 872 P.2d [627,] 655 [ (Alaska App.1994) ].

*Hilbish*, 891 P.2d at 853 n. 5.

We reached the same conclusion in *Norris v. State*, 857 P.2d 349 (Alaska App.1993), a case whose facts are more closely analogous to the facts of Rogers's case. *Norris* involved a prosecution for second-degree murder. We held that the jurors did not need to unanimously agree on whether the victim died because the defendant deliberately fired his rifle at the victim (as the government alleged) or, instead, whether Norris merely pointed the rifle at the victim, and the victim responded by grabbing the pointed rifle, causing it to discharge by accident. *Id.* at 354.

■ For these reasons, we reject Rogers's interpretation of *Michael*. The supreme court's decision in *Michael* does not stand for the rule that a trial jury is forbidden to deviate from the view of events adopted by the grand jury. Rather, *Michael* stands for the rule that, in felony prosecutions, the defendant can not be convicted of an offense unless the State has obtained a grand jury finding on every essential element of that offense.

(For clarification, it is sufficient if the grand jury's findings *include* the essential elements of the offense for which the defendant is convicted—as, for instance, where the grand jury finds that the defendant acted "intentionally" with respect to a result specified in the statute, and the trial jury finds that the defendant acted "recklessly" with respect to this result. *See* AS 11.81.610(c). *See also Cheely v. State*, 850 P.2d 653, 661–63 (Alaska App.1993) (holding that all six of the methods of committing theft defined in AS 11.46.100 are encompassed by a theft indictment).)

In Rogers's case, the grand jury indicted Rogers for first-degree murder because the grand jurors found that Rogers caused the death of Brian Black, and that Rogers acted "intentionally" with respect to causing a human death. The trial jury agreed that Rogers caused Black's death (although the trial jury adopted a different view of the underlying facts), but the trial jurors rejected the State's assertion that Rogers intended to cause death; instead, they found that Rogers acted recklessly with respect to the risk of death.

Given these facts, the trial jury's verdict of manslaughter did not constitute a fatal variance from the grand jury indictment.

*Rogers's argument that his defense attorney detrimentally relied on the trial judge's initial refusal to instruct the jury on the applicable law of causation*

Rogers's alternative argument is that he detrimentally relied on the fact that the trial judge initially refused to instruct the trial jurors on the "substantial factor" test for causation.

As we explained earlier, the jurors submitted a mid-deliberation question that asked for further instruction concerning causation; the jurors' question prompted the trial judge to alter his earlier decision and instruct the jurors on causation (in particular, the "substantial factor" test for causation). Rogers does not argue that the judge's causation instruction was legally incorrect. Rather, Rogers contends that even if that causation instruction correctly stated the law, the judge's decision to give the jurors that instruction was unfair—because, when Rog-

ers's defense attorney delivered his summation to the jury at the end of the trial, the defense attorney detrimentally relied on the trial judge's *initial* ruling that the jurors would not be instructed on the applicable law of causation.

To answer Rogers's argument, we must briefly recapitulate the procedural history that led to the trial judge's ultimate decision to instruct the jurors on causation.

After the presentation of evidence at Rogers's trial was complete, the trial judge and the attorneys discussed jury instructions. During that discussion, the prosecutor twice asked the trial judge to instruct the jurors on the law of causation—in particular, the "substantial factor" test for causation.

The prosecutor pointed out that, in light of the conflicting evidence on how the shooting occurred, the jurors might come to the conclusion "that Mr. Rogers pulled the gun [and] pointed it at Mr. Black, but did not shoot"— and that "during the struggle that ensued, ... [either] through the victim himself pulling the gun away from the defendant, or from a third [person] intervening in the struggle and disarming the defendant, that's [how] the death of Mr. Black ... was caused." Thus, the prosecutor argued, the jurors needed to understand how the law of causation applied to that set of facts.

Rogers's attorney opposed the prosecutor's request, and he succeeded in convincing the trial judge not to give a jury instruction on causation. However, when the trial judge issued this ruling, the judge expressly stated that he might revisit this issue "if ... the jury has a question".

The parties then delivered their summations to the jury.

In his opening summation, the prosecutor argued that Rogers deliberately shot and killed Black. In response, the defense attorney argued that the evidence demonstrated a reasonable possibility that Rogers did not deliberately shoot Black, but that instead the gun went off accidentally during the struggle between Rogers and Black and Black's coworkers.

Then the defense attorney made an argument that took advantage of the fact that the jurors had not been instructed on the "substantial factor" causation test: the defense attorney told the jury that, not only had the State failed to prove first-degree murder, but the State had also failed to prove either of the potential lesser offenses (second-degree murder and manslaughter) "because they have failed to prove beyond a reasonable doubt that Shawn [Rogers] caused the death of Brian Black".

In reply to this argument, the prosecutor told the jurors that, even if they did not believe that Rogers was guilty of deliberately shooting Black, Rogers could nevertheless be found guilty of a lesser degree of homicide because Rogers's act of threatening Black with a handgun was the event that set the homicide in motion.

The next afternoon, during jury deliberations, the court received a note from the jury, asking for further instruction on the law of causation as it related to the lesser included offense of manslaughter. The jury asked if Rogers could be found to have "caused" Black's death if Rogers's conduct only *contributed* to the death, or if the law instead required the State to prove that Black's death was entirely Rogers's fault.

As we have already explained, when the trial judge initially ruled on (and denied) the prosecutor's request for a causation instruction, the judge expressly told the parties that he might reconsider his ruling "if ... the jury has a question". Based on the jury's question, the judge concluded that he now needed to give the jurors a fuller explanation of causation. So the judge finally instructed the jurors on the "substantial factor" test, and he expressly told the jurors that Rogers's conduct did not have to be the sole cause of Black's death.

After receiving this supplemental instruction, the jury convicted Rogers of manslaughter.

Rogers now argues that it was unfair for the trial judge to alter course and instruct the jurors on the applicable law of causation. In support of this argument, Rogers relies heavily on this Court's decision in *Rollins v. State*, 757 P.2d 601 (Alaska App.1988).

In *Rollins*, the defendant was indicted for third-degree assault (placing another person in fear of imminent serious physical injury). After the close of the evidence, the defense attorney initially requested a jury instruction on the lesser included offense of fourth-degree assault (placing another in fear of imminent, non-serious physical injury), but then the defense attorney withdrew this request. The State did not object to submitting the case to the jury with the jury's deliberations limited to third-degree assault. *Id.* at 602.

During final argument, Rollins's attorney focused on the element of serious physical injury, arguing that the victim might have reasonably feared some physical injury but not the serious physical injury necessary for conviction of third-degree assault. The jury, apparently crediting the defense attorney's argument, sent a note to the judge asking what they should do if they found that the victim had reasonably feared only non-serious injury. In reply, and over Rollins's objection, the judge instructed the jury on fourth-degree assault, and the jury convicted Rollins of this lesser charge. *Ibid.*

On appeal, this Court reversed Rollins's conviction. We recognized that, as a matter of law, Rollins was on notice that fourth-degree assault was a potential lesser included offense. Nevertheless, we held that, after the State and the trial judge agreed to send the case to the jury solely on the charge of third-degree assault, Rollins was entitled to rely on this posture of the case when formulating his summation to the jury. More specifically, this Court concluded that Rollins had justifiably relied to his detriment on the restricted charge when he decided to focus his argument on the State's failure to prove the element of fear of imminent "serious physical injury". *Id.* at 602–03.

 Rogers argues that his case presents the same sort of detrimental reliance. In *Rollins*, however, the State's attorney acquiesced in the defense attorney's decision to present the case to the jury in an "all or nothing" posture—*i.e.,* in such a way that lesser offenses would not be at issue. In Rogers's case, on the other hand, the prose-

cutor actively (and correctly) argued that the jurors needed to be instructed on the law of causation if they were to properly consider the lesser included offenses of second-degree murder and manslaughter.

Rogers's defense attorney opposed the prosecutor's request and convinced the trial judge not to instruct the jurors on causation. Then, in his summation, the defense attorney actively argued that the evidence failed to establish that Rogers caused Black's death—which appears to have been a key factor in prompting the jury to ask for further instruction concerning the law of causation.

Moreover, Rogers's attorney was on notice (when he delivered his summation) that the trial judge was willing to reconsider the issue of whether the jury should be instructed on causation, should the jury later inquire about this matter. Later, the jury did indeed pose a question concerning the law of causation—and, in accordance with his earlier caveat, the judge reconsidered the issue and decided to instruct the jury on causation. In other words, if Rogers's attorney formulated his summation to the jury under the assumption that the jury would never be instructed on the applicable law of causation, the defense attorney's assumption was unreasonable—because it was at odds with the trial judge's ruling.

For these reasons, we conclude that it was not unfair for the trial judge to instruct the jurors on the applicable law of causation in response to their mid-deliberation question.

*Rogers's argument that the State breached its duty to present exculpatory evidence to the grand jury*

Rogers claims that the State breached its duty to present exculpatory evidence to the grand jury when the State failed to apprise the grand jury of a short statement—comprising only a few sentences—that Rogers made to a state trooper about the incident.

Rogers made this statement several hours after the shooting, when he was in custody. Rogers was not being interrogated at the time; rather, he volunteered his statement while he was waiting in a patrol car with the state trooper. According to the trooper's handwritten notes, Rogers said: "It went bad. I got jumped on. . . . [It's] not every day someone gets jumped, gets [their] gun taken away, and someone ends up dead. It happened tonight."

Relying on the trooper's handwritten notes of Rogers's statement, Rogers's attorney asked the superior court to dismiss the murder indictment. In his motion, the defense attorney referred to Rogers's statement as an assertion "that he did not do anything wrong". But, as can be seen from the state trooper's account of Rogers's statement (quoted in the preceding paragraph), Rogers did not directly assert that he had done nothing wrong. Rather, this was the defense attorney's characterization of Rogers's statement. And that characterization is, at best, debatable.

■ As we have already explained (at length) in this opinion, Rogers would be criminally responsible for causing Black's death if he drew his gun and pointed it at Black, prompting Black and his co-workers to take defensive measures, and then the gun discharged accidentally during the struggle. And if Rogers pointed the gun at Black with an intent to kill, Rogers could properly be found guilty of first-degree murder (the offense for which he was indicted) even though his finger was not on the trigger when the gun went off.

Thus, Rogers's statements that "[he] got jumped on [by Black and his co-workers]", and that "[his] gun [got] taken away, and someone end[ed] up dead" are not exculpatory—at least, not standing by themselves. If Rogers initiated the incident by pointing his gun at Black, and if he did so with an intent to kill, then the grand jury could properly indict Rogers for first-degree murder even if Rogers's statements to the trooper were true.

One could, of course, argue that Rogers's statements suggested that he was innocent of murder. But this is not sufficient to establish that the prosecutor had a duty to present these statements to the grand jury.

■ As the Alaska Supreme Court explained in *Frink v. State*, 597 P.2d 154, 166 (Alaska 1979), "the prosecutor's obligation to present exculpatory evidence to the grand jury does not turn the prosecutor into a

defense attorney; the prosecutor does not have to develop evidence for the defendant [or] present every lead possibly favorable to the defendant." Thus, as this Court stated in *Cathey v. State*, 60 P.3d 192, 195 (Alaska App.2002), "[a] prosecutor's duty to apprise the grand jury of exculpatory evidence extends only to evidence that tends, in and of itself, to negate the defendant's guilt."

For these reasons, we uphold the superior court's denial of Rogers's motion to dismiss the indictment.

*Conclusion*

The judgement of the superior court is AFFIRMED.